No. 26-11374-BB

# In the United States Court of Appeals For the Eleventh Circuit

JEREMIAH VERNON WEBB
Plaintiff-Appellant

v.

FLORIDA DEPARTMENT OF CHILDREN
AND FAMILIES; DAVID BOOKER;
DEKESHA J. BATTIESTE; TONGE
JOHNSON; JOHN DOES 1-99; and
JANE DOES 1-99,
Defendants-Appellees

Appeal from the United States District Court
for the Middle District of Florida
D.C. Case No. 8:25-cv-01990-SDM-LSG

**APPELLANT JEREMIAH VERNON WEBB'S INITIAL BRIEF**

By: JEREMIAH VERNON WEBB
Plaintiff-Appellant, pro se
11121 Lost Creek Terrace, Unit 101
Lakewood Ranch, Florida 34211
801-755-9600
jeremiah@shoponfire.com

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule

26.1, Plaintiff-Appellant Jeremiah Vernon Webb certifies that the following

persons and entities may have an interest in the outcome of this appeal:

1. Battieste, Dekesha J. - Defendant-Appellee
2. Booker, David - Defendant-Appellee
3. B.A.W. - minor child referenced by initials in the proposed pleading
4. Cervera n/k/a Hall, Ligia - related state-court party referenced in the R&R
5. Cespedes, Clifford J. - related law-enforcement actor referenced in the pleadings and R&R
6. Diocese of Venice in Florida - related entity referenced in the R&R
7. Florida Department of Children and Families - Defendant-Appellee
8. Favorin, Rachael A. - proposed individual-capacity defendant in Doc. 12-1
9. Griffin, Hon. Lindsay S. - United States Magistrate Judge
10. Incarnation Catholic School - related entity referenced in the R&R
11. Incarnation Parish in Sarasota, Inc. - related entity referenced in the R&R
12. Jane Does 1-99 - Defendants-Appellees/proposed defendants
13. John Does 1-99 - Defendants-Appellees/proposed defendants
14. Johnson, Tonge - Defendant-Appellee
15. Merryday, Hon. Steven D. - United States District Judge
16. Sarasota County - entity referenced in pleadings and docket materials
17. Sarasota County Sheriff's Office - entity referenced in the R&R and prior pleading
18. Webb, Jeremiah Vernon - Plaintiff-Appellant

No publicly traded company or corporation has an interest in the outcome of this

case or appeal.

Dated: July 10th, 2026
Respectfully submitted,

_____
JEREMIAH VERNON WEBB
Plaintiff-Appellant, pro se

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant requests oral argument. This appeal presents a focused procedural question: when a pro se plaintiff timely objects to an R&R and files a verified proposed amended complaint that materially narrows the case, may the district court screen only the old pleading and deny the proposed operative pleading as "moot"? Oral argument would assist because the reversible mechanism is narrow, but the record contains several doctrines – Rule 15, § 1915, claim splitting, domestic-relations abstention, qualified immunity, and sanctions – that should be sequenced rather than collapsed.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ............................................................... 2

STATEMENT REGARDING ORAL ARGUMENT ........................................ 3

TABLE OF CONTENTS ................................................................... 4

TABLE OF CITATIONS ................................................................... 6

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION ............................................................................ 9

STATEMENT OF THE ISSUES .......................................................... 9

STATEMENT OF THE CASE .......................................................... 10

  A.  Nature of the case and order under review ............................... 10

  B.  The issues were preserved in specific objections and a pre-judgment motion
attaching the proposed pleading ......................................... 11

  C.  The decisive pleaded facts establish a specific state-authority
causal chain ............................................................... 11

  D.  Standards of review ..................................................... 13

SUMMARY OF THE ARGUMENT ................................................... 14

ARGUMENT ............................................................................ 16

**I.   THE APRIL 15 ORDER MUST BE VACATED BECAUSE THE
COURT SCREENED DOC. 6 WHILE REFUSING TO EVALUATE THE
PROPOSED OPERATIVE PLEADING** ......................................... 16

  A.  The issue was preserved, and the governing legal standard is reviewed de
novo ....................................................................... 16

  B.  Rule 15 and § 1915 required evaluation of Doc. 12-1 rather than continued
screening of Doc. 6 ..................................................... 17

  C.  The order did not exercise discretion as to Doc. 12-1 or make the required de
novo determination of the specific objections ......................... 18

  D.  The error affected the judgment because Doc. 12-1 materially changed every
defect the R&R identified ............................................... 19

E. The requested holding is narrow and leaves all claim-specific defenses available on remand ........................................................................... 20

F. Vacatur and remand for specified screening is the proper disposition ...... 21

**II. NO INDEPENDENT GROUND MAKES THE RULE 15 ERROR HARMLESS BECAUSE DOC. 12-1 REQUIRED CLAIM-SPECIFIC SCREENING** ................................................................................................ 21

A. The individual-capacity structure eliminated the R&R's sovereign-immunity and Monell grounds ............................................................................ 21

B. Domestic-relations doctrine did not permit wholesale dismissal of independent federal damages claims ................................................... 23

C. Claim splitting could at most narrow overlapping allegations; it did not dispose of later acts or the entire proposed complaint ...................... 24

D. Qualified immunity does not support blanket affirmance on a pleading the district court never screened ......................................................... 25

E. Even if the Court accepts part of an alternative ground, the proper remedy remains a narrowed remand ............................................................. 26

**III. DOC. 12-1 WAS NOT FUTILE IN ITS ENTIRETY BECAUSE THE BOOKER/BATTIESTE ALLEGATIONS WERE PLAUSIBLE ENOUGH TO REQUIRE SCREENING** ......................................................................... 27

A. At the amendment stage, allegations are tested for plausibility, not proof ................................................................................................ 28

B. The procedural-due-process claim pleaded notice, affirmative conduct, causation, and injury as to Booker and Battieste ............................... 28

C. The strongest opposing theory - private conduct or failure to protect - does not match the proposed allegations ...................................................... 30

D. The First Amendment retaliation allegations against Booker and Battieste also required analysis ....................................................................... 31

E. Possible weakness in other theories was severable and could not establish futility of the entire amendment ....................................................... 32

F. Because at least one claim might proceed, the district court had to permit or evaluate a narrower operative pleading ............................................ 33

CONCLUSION ................................................................................................ 33

CERTIFICATE OF COMPLIANCE ............................................................... 34

CERTIFICATE OF SERVICE ........................................................................ 34

# TABLE OF CITATIONS

## **CASES**

*Ankenbrandt v. Richards,*

    504 U.S. 689 (1992) ................................................................ 23

*Behr v. Campbell,*

    8 F.4th 1206 (11th Cir. 2021) ................................................... 23

*Bennett v. Hendrix,*

    423 F.3d 1247 (11th Cir. 2005) ................................................. 31

*Betty K Agencies, Ltd. v. M/V Monada,*

    432 F.3d 1333 (11th Cir. 2005) ...................................... 18-19, 27

*Bryant v. Dupree,*

    252 F.3d 1161 (11th Cir. 2001) ...................................... 13, 16-17

*Carey v. Piphus,*

    435 U.S. 247 (1978) ................................................................ 32

*DeShaney v. Winnebago County Department of Social Services,*

    489 U.S. 189 (1989) ........................................................... 26, 30

*Doe v. Kearney,*

    329 F.3d 1286 (11th Cir. 2003) ............................................ 26, 28

*Foman v. Davis,*

    371 U.S. 178 (1962) ................................................................ 17

*Griffin v. County School Board,*

    377 U.S. 218 (1964) ................................................................ 25

*Hafer v. Melo,*

    502 U.S. 21 (1991) .................................................................. 22

*Houston v. Country Club, Inc.,*

    887 F.3d 1270 (11th Cir. 2018) ............................................ 19, 27

*Ingram v. Hayes,*

866 F.2d 368 (11th Cir. 1988) ................................................................... 23-24

*Kennedy v. Floridian Hotel, Inc.,*

998 F.3d 1221 (11th Cir. 2021) ................................................................... 24

*Keeton v. Anderson-Wiley,*

664 F.3d 865 (11th Cir. 2011) ................................................................... 31

*Kentucky v. Graham,*

473 U.S. 159 (1985) ................................................................... 22

*Lawlor v. National Screen Service Corp.,*

349 U.S. 322 (1955) ................................................................... 25

*Lewis v. Clarke,*

581 U.S. 155 (2017) ................................................................... 22

*McNair v. Johnson,*

143 F.4th 1301 (11th Cir. 2025) ................................................................... 19, 27

*Mitchell v. Farcass,*

112 F.3d 1483 (11th Cir. 1997) ................................................................... 13, 28

*Monell v. Department of Social Services,*

436 U.S. 658 (1978) ................................................................... 10-11, 18-21, 24

*Santosky v. Kramer,*

455 U.S. 745 (1982) ................................................................... 28

*Silberman v. Miami Dade Transit,*

927 F.3d 1123 (11th Cir. 2019) ................................................................... 13, 16-17, 28

*Spanish Broadcasting System of Florida, Inc. v. Clear Channel Communications,*
*Inc.,*

376 F.3d 1065 (11th Cir. 2004) ................................................................... 17

*Sprint Communications, Inc. v. Jacobs,*

571 U.S. 69 (2013) ................................................................... 23

*Stanley v. Illinois,*

405 U.S. 645 (1972) ................................................................... 28

*Stone v. Wall,*
135 F.3d 1438 (11th Cir. 1998) ..................................................... 23

*Troville v. Venz,*
303 F.3d 1256 (11th Cir. 2002) ..................................................... 17

*Troxel v. Granville,*
530 U.S. 57 (2000) ..................................................................... 28

*Vanover v. NCO Financial Services, Inc.,*
857 F.3d 833 (11th Cir. 2017) ...................................................... 24

*Will v. Michigan Department of State Police,*
491 U.S. 58 (1989) ..................................................................... 22

*Woldeab v. DeKalb County Board of Education,*
885 F.3d 1289 (11th Cir. 2018) .................................................... 17

## STATUTES

28 U.S.C. § 1291 ........................................................................ 9

28 U.S.C. § 1331 ........................................................................ 9

28 U.S.C. § 1343(a)(3)-(4) ............................................................ 9

28 U.S.C. § 1915(e)(2)(B) ................................. 3, 10-11, 13, 17, 21, 33

28 U.S.C. § 636(b)(1) ..................................................... 13, 19, 21, 33

42 U.S.C. § 1983 ................................................................... 9-10, 22

## RULES

Fed. R. App. P. 4(a)(1)(A) ............................................................. 9

Fed. R. App. P. 26.1 .................................................................... 2

Fed. R. App. P. 32 ...................................................................... 34

Fed. R. Civ. P. 12(b)(6) ................................................................ 28

Fed. R. Civ. P. 15(a)(2) ........................... 3, 9-10, 13-18, 20-21, 25, 33

Fed. R. Civ. P. 15(d) .......................................................... 21, 25, 33

Fed. R. Civ. P. 72(b)(3) ................................................... 13, 19, 21, 33

11th Cir. R. 26.1 ........................................................................ 2

**STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION**

The district court had federal-question jurisdiction under 28 U.S.C. § 1331 and civil-rights jurisdiction under 28 U.S.C. § 1343(a)(3)-(4). The proposed verified Second Amended Complaint invoked 42 U.S.C. § 1983 and alleged that individual state actors, acting under color of law, violated the First and Fourteenth Amendments through their own conduct. Doc. 12-1, PageID 103-05, ¶¶ 1-15.

The district court entered a final order on April 15, 2026, adopting the Report and Recommendation ("R&R"), denying district-court in forma pauperis status, dismissing the amended complaint without leave to amend, denying the pending motion for leave to amend as moot, and closing the case. Doc. 14, PageID 127-28. Appellant filed a notice of appeal on April 21, 2026. Doc. 16. The notice was timely under Fed. R. App. P. 4(a)(1)(A), and this Court has appellate jurisdiction under 28 U.S.C. § 1291.

**STATEMENT OF THE ISSUES**

1. Controlling issue: whether the April 15 order must be vacated because the district court entered final dismissal after screening Doc. 6 while denying as "moot" a pre-judgment Rule 15 motion attaching Doc. 12-1, the proposed operative complaint that materially addressed the R&R's stated defects.

2.      Harmless-error/alternative-ground issue: whether any independent ground supports affirmance when Doc. 12-1 removed the entity-immunity and Monell defects, omitted the state-law count, disclaimed domestic-relations relief, added later events, and required claim-specific screening.

3.      Remedy/preservation issue: whether vacatur and remand are required because, at minimum, the Booker/Battieste procedural-due-process and retaliation allegations were plausible enough to defeat whole-complaint futility.

**STATEMENT OF THE CASE**

**A.      Nature of the case and order under review.**

This is a Rule 15 and § 1915 screening appeal. Appellant does not ask this Court to modify custody, alter timesharing, enforce a parenting plan, review a family-court ruling, or decide who should have custody of a child. He challenges the final order that dismissed Doc. 6 while denying as moot a pre-judgment motion to file Doc. 12-1, a narrower proposed verified § 1983 complaint. Doc. 14, PageID 127-28.

The R&R screened Doc. 6 and recommended dismissal without leave to amend. Doc. 10, PageID 76, 88. It relied on five grounds: claim splitting; failure to state an entity claim against DCF and the Sarasota County Sheriff's Office; Eleventh Amendment immunity; domestic-relations abstention; and futility. Doc. 10, PageID 81-88.

**B. The issues were preserved in specific objections and a pre-judgment motion attaching the proposed pleading.**

Appellant timely objected to the R&R and moved for leave to amend before final judgment. Doc. 11; Doc. 12. The objections identified the proposed cures: Doc. 12-1 removed DCF as a damages defendant, removed the state-law count, removed the Sheriff/Monell theory, and pleaded only individual-capacity federal claims. Doc. 11 at 1-4. The proposed verified Second Amended Complaint was attached to the motion as Doc. 12-1.

The April 15 order acknowledged both the objections and the motion for leave. Doc. 14, PageID 127. It did not discuss Doc. 12-1, its changed defendants, its limitation on relief, or its new allegations. The order stated only that "[a] de novo review of the report reveals no error," adopted the R&R, dismissed Doc. 6 without leave, and denied Doc. 12 "AS MOOT." Doc. 14, PageID 127-28.

After the appeal was filed, Appellant filed the required no-transcript certificate because the issues arise from the written record. Doc. 19, PageID 148-50. On June 1, 2026, the district court granted Appellant leave to proceed in forma pauperis on appeal. Doc. 20, PageID 151-52. The appeal-fee issue is therefore resolved. The remaining § 1915 issue is merits screening: whether the court could screen Doc. 6 while refusing to evaluate Doc. 12-1.

**C. The decisive pleaded facts establish a specific state-authority causal chain.**

The proposed complaint used the parenting materials for a limited purpose: to show a protected parent-child interest and the individual defendants' notice, not to ask a federal court to enforce a parenting order. It alleged Appellant had court-ordered timesharing during the February 2025 events. Doc. 12-1, PageID 106, ¶¶ 16-17. It alleged knowledge: before the challenged withholding, Appellant showed Booker the operative parenting materials, and later gave the same materials to Battieste. Id., PageID 106-08, ¶¶ 21-37.

It then alleged affirmative choices and a causal mechanism. Booker allegedly stated that he had told the child's mother to take the child and, after Appellant complained to Battieste in Booker's presence, allegedly told law enforcement that the child should be kept from Appellant. Id., PageID 106-09, ¶¶ 23-26, 31-48. Battieste allegedly acknowledged the parenting materials and said DCF would communicate that understanding to law enforcement, but later allegedly communicated that the child should be withheld because of a supposed new investigation. Id., PageID 107-11, ¶¶ 29-37, 55-66. The mother and responding officers allegedly identified DCF communications as the reason the child would not be released. Id., PageID 108-09, ¶¶ 34-45. The alleged injury was loss of parent-child time caused by state-authority communications without adequate process. Id., PageID 109-10, ¶¶ 49-50; PageID 115, ¶ 96.

The proposed complaint also alleged later conduct not addressed by the R&R's February-April framing: a July 30, 2025 investigation assigned to Favorin, a verified "mental injury" finding, and no completed face-to-face interview of Appellant before closure. Id., PageID 114, ¶¶ 86-89; PageID 121-22, ¶¶ 126-132.

The adverse record facts are not concealed. The R&R noted a pending state action involving DCF, Booker, Battieste, and Johnson and overlapping February-April 2025 events. Doc. 10, PageID 81-83. It also noted that Appellant had amended once. Id., PageID 87. Those circumstances could support narrowing or claim-specific dismissal. They did not answer whether the materially different Doc. 12-1 was futile in its entirety.

**D.  Standards of review.**

De novo review controls the main defect. The question is what Rule 15 and § 1915 required when a pre-judgment motion attached a materially different proposed pleading. Legal questions – including Rule 15, Rule 72(b)(3), § 636(b)(1), § 1915, Eleventh Amendment immunity, subject-matter jurisdiction, and futility – are reviewed de novo. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132-33 (11th Cir. 2019); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).

Abuse-of-discretion review governs only the range of permissible dispositions after the legal framework is applied. A district court may deny

amendment for undue delay, bad faith, repeated failure to cure, prejudice, or futility. But it exceeds the lawful range when it bypasses those choices by calling the live motion "moot." Abstention, claim splitting, and docket-management rulings are reviewed for abuse of discretion; embedded legal conclusions are reviewed de novo.

## SUMMARY OF THE ARGUMENT

One sentence decides this appeal: a live Rule 15 motion to replace the complaint being dismissed does not become moot because the court simultaneously dismisses the old complaint. The district court ended the case by screening Doc. 6 while refusing to evaluate Doc. 12-1, the filed and verified proposed pleading that would have replaced it. Appellant does not ask this Court to resolve a custody dispute, decide disputed facts, or hold that every proposed count survives. The requested relief is narrower: vacatur and remand for the district court to evaluate the proposed operative pleading under the correct standard.

First, the April 15 order should be vacated because it applied no Rule 15 standard to Doc. 12-1. Rule 15 required a reasoned decision based on delay, bad faith, prejudice, repeated failure to cure, or futility. The order identified none. It dismissed Doc. 6 and declared Doc. 12 moot, even though Doc. 12-1 would have displaced Doc. 6 and supplied the pleading to be screened. That legal error was prejudicial because Doc. 12-1 materially changed every defect the R&R identified.

Second, no independent ground makes the error harmless. Doc. 12-1 removed the immune agency and municipal-liability theories, sued natural persons in their individual capacities, disclaimed domestic-relations relief, added later events, and required a claim-specific comparison. The pending state case may justify narrowing overlapping allegations, but it did not eliminate later events or permit the district court to skip the actual proposed pleading. Nor can qualified immunity substitute for the defendant-by-defendant analysis the district court never performed.

Third, at least the procedural-due-process and retaliation allegations against Booker and Battieste were plausible enough to require screening. The pleaded mechanism was specific: a protected parent-child interest reflected in court-ordered timesharing; actual notice to the individual actors; alleged DCF directives or communications; reliance by the mother or law enforcement; and loss of parent-child time without adequate process. That theory alleges affirmative use of state authority, not negligence, passive failure to protect, enforcement of a parenting order, or liability for private family conduct.

Nor can the judgment be recast as a sanction or docket-management dismissal. Because the order denied amendment as moot, dismissed without leave, and closed the case, it operated as a merits-ending disposition unless this Court restores the Rule 15 opportunity. Eleventh Circuit precedent requires a clear pattern

of delay or willful contempt and consideration of lesser sanctions before that result can stand. The order made no misconduct finding, gave no sanction notice, and considered none of the obvious lesser alternatives.

## ARGUMENT

The Court can resolve this appeal without deciding the ultimate merits. A district court may dismiss an insufficient complaint; it may deny leave to amend for a recognized Rule 15 reason; and it may narrow duplicative or deficient claims. But denying a live replacement pleading as moot was not one of the lawful options. The remaining arguments show why no alternative ground makes that procedural error harmless.

## I. THE APRIL 15 ORDER MUST BE VACATED BECAUSE THE COURT SCREENED DOC. 6 WHILE REFUSING TO EVALUATE THE PROPOSED OPERATIVE PLEADING.

### A. The issue was preserved, and the governing legal standard is reviewed de novo.

Appellant's objections and motion squarely presented the question whether Doc. 12-1 cured the R&R's defects. Doc. 11 at 1-4; Doc. 12. The district court acknowledged those filings and ruled on them. Doc. 14, PageID 127-28. There is no preservation gap.

The standard of review reinforces the narrow path. What Rule 15 required and whether futility existed are legal questions reviewed de novo. *Bryant*, 252 F.3d at 1163; *Silberman*, 927 F.3d at 1132-33. Abuse-of-discretion review asks whether

the district court stayed within the lawful range of choices. It did not, because it made no Rule 15 choice at all as to Doc. 12-1. The central question is therefore not whether this Court should decide every proposed count; it is whether a live motion to replace the complaint being dismissed can be denied as moot without analysis.

**B.     Rule 15 and § 1915 required evaluation of Doc. 12-1 rather than continued screening of Doc. 6.**

Rule 15(a)(2) directs courts to "freely give leave when justice so requires." In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Supreme Court held that outright refusal without a justifying reason is an abuse of discretion. Permissible reasons include undue delay, bad faith, repeated failure to cure, undue prejudice, or futility. Id.

Binding Eleventh Circuit authority applies that rule at the screening stage. *Bryant* requires a "substantial reason" to deny leave. 252 F.3d at 1163. *Troville v. Venz*, 303 F.3d 1256, 1260 n.5 (11th Cir. 2002), confirms that § 1915 screening does not displace Rule 15. *Woldeab v. DeKalb County Board of Education*, 885 F.3d 1289, 1291-92 (11th Cir. 2018), requires an opportunity to amend when a more carefully drafted complaint might state a claim. *Silberman* holds that amendment is futile only if the complaint "as amended" would still be properly dismissed. 927 F.3d at 1132-33. And *Spanish Broadcasting System of Florida, Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004), evaluates futility against the proposed amended complaint.

The mechanism is straightforward. Doc. 12-1 was not a promise to amend later. It was attached, verified, and filed before judgment. The court had several lawful options: grant leave, deny leave for an identified Rule 15 reason, permit only part of the amendment, require a narrower pleading, or screen the proposed complaint. It chose none. It treated Doc. 6 as dispositive while declaring the motion that would replace Doc. 6 moot.

### C. The order did not exercise discretion as to Doc. 12-1 or make the required de novo determination of the specific objections.

The order did not find undue delay, bad faith, prejudice, repeated failure to cure, or futility of Doc. 12-1. It did not mention the proposed pleading's individual-capacity structure, removal of DCF, removal of the Sheriff/Monell theory, omission of the state-law count, limitation on domestic-relations relief, retaliation allegations, or later Favorin allegations. It denied Doc. 12 "AS MOOT." Doc. 14, PageID 128.

The problem is not brevity. A district court need not write a lengthy opinion. The problem is the disposition itself. Doc. 12 was not collateral to the judgment; it determined whether Doc. 6 would remain the operative pleading. A motion that would replace the complaint being dismissed does not become moot merely because the court simultaneously dismisses that earlier complaint.

Nor can the omission be salvaged by characterizing the order as an implicit case-management or inherent-authority sanction. In *Betty K Agencies, Ltd. v. M/V*

*Monada*, 432 F.3d 1333, 1337-38 (11th Cir. 2005), this Court held that dismissal with prejudice is an extreme sanction that requires both a clear pattern of delay or willful contempt and a finding that lesser sanctions would not suffice. *McNair v. Johnson*, 143 F.4th 1301, 1308-09 (11th Cir. 2025), reaffirmed that rule while distinguishing a true dismissal without prejudice because its consequences are less severe and refiling is ordinarily available. *Houston v. Country Club, Inc.*, 887 F.3d 1270, 1279-80 (11th Cir. 2018), supplies the related functional-equivalence rule: when a nominally without-prejudice dismissal effectively forecloses further litigation, the stricter dismissal-with-prejudice standard applies. Here, the district court made no finding of willful or contumacious conduct, identified no misconduct in Doc. 12, and did not consider the less drastic alternatives of screening Doc. 12-1, permitting only part of the amendment, or requiring a narrowed corrected pleading.

The same omission defeated the required de novo determination. Rule 72(b)(3) and § 636(b)(1) required the district judge to determine de novo the specified matters to which Appellant objected. The objections specifically asserted that the proposed pleading cured the entity, immunity, Monell, state-law, and domestic-relations defects. Doc. 11 at 1-4. By denying the motion as moot, the order did not decide the precise question the objections presented.

> **D.  The error affected the judgment because Doc. 12-1 materially changed every defect the R&R identified.**

The appellate prejudice is direct: legal error led the court to screen the wrong pleading, which produced final dismissal without determining whether the proposed operative pleading could proceed.

First, the R&R's Eleventh Amendment analysis addressed DCF; Doc. 12-1 removed DCF as a damages defendant. Doc. 10, PageID 84-86; Doc. 11 at 3. Second, the R&R's Monell analysis addressed the Sheriff's Office; Doc. 12-1 removed that defendant and theory. Doc. 10, PageID 83-84; Doc. 11 at 3. Third, Doc. 12-1 omitted the state-law count. Doc. 11 at 3. Fourth, it expressly disclaimed custody modification, timesharing alteration, state-order review, and appellate review of a state judgment. Doc. 12-1, PageID 104-05, ¶¶ 2-3, 13-15. Fifth, it pleaded individual conduct, dates, notice, causation, retaliation, and later verified-finding events. Id., PageID 106-22, ¶¶ 16-132.

A proper Rule 15 analysis might still result in narrowing, dismissal of some defendants, or rejection of some counts. But it could also result in filing of all or part of Doc. 12-1. Because the omitted analysis determined whether final dismissal was proper, the error was not harmless.

### E. The requested holding is narrow and leaves all claim-specific defenses available on remand.

This Court need hold only that when a plaintiff files, before judgment, a motion attaching a materially different proposed complaint and specifically identifies how it addresses the recommended grounds for dismissal, the district

court must evaluate that proposed pleading under Rule 15 before entering final dismissal. The rule does not guarantee amendment, excuse duplicative litigation, eliminate qualified immunity, or require acceptance of every count.

This case lies within that narrow rule because Doc. 12-1 was already filed, the objections identified the cures, and the order denied the motion solely as moot without analyzing the proposed pleading.

### F.  Vacatur and remand for specified screening is the proper disposition.

The Court should vacate the April 15 order and remand for the district court to evaluate Doc. 12-1 under Rule 15(a)(2), Rule 15(d) if applicable, Rule 72(b)(3), § 636(b)(1), and § 1915(e)(2)(B). The order cannot stand because the court applied the wrong legal framework before reaching discretion.

## II.  NO INDEPENDENT GROUND MAKES THE RULE 15 ERROR HARMLESS BECAUSE DOC. 12-1 REQUIRED CLAIM-SPECIFIC SCREENING.

### A.  The individual-capacity structure eliminated the R&R's sovereign-immunity and Monell grounds.

The R&R correctly recognized that DCF is protected by Eleventh Amendment immunity and that Doc. 6 failed to allege a municipal policy or custom against the Sheriff's Office. Doc. 10, PageID 83-86. Those conclusions addressed defendants and theories Doc. 12-1 removed.

*Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), bars damages claims against a State and state officials sued in their official capacities. But *Hafer v. Melo*, 502 U.S. 21, 25-31 (1991), holds that state officials sued personally are "persons" under § 1983, and *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985), distinguishes personal-capacity liability from entity liability. *Lewis v. Clarke*, 581 U.S. 155, 162-63 (2017), likewise confirms that the real party in interest in an individual-capacity damages action is the individual, not the sovereign, even when the challenged conduct occurred in government work.

Doc. 12-1 followed that distinction. It named Booker, Battieste, Johnson, Favorin, and Doe defendants in their individual capacities and sought to impose liability for their own alleged conduct under color of law. Doc. 12-1, PageID 103-05, ¶¶ 8-12. Acting under color of state law does not convert a personal-capacity claim into an official-capacity claim; action under color of law is an element of § 1983 itself.

The function alleged also matters. Doc. 12-1 does not seek entity liability against DCF, a county, or a sheriff's office. It alleges that identified natural persons used or communicated child-protection authority through directives, confirmations, investigations, and findings. Whether those allegations ultimately establish personal liability is a claim-specific question. The R&R's entity grounds could not establish futility of the proposed complaint in its entirety.

**B.      Domestic-relations doctrine did not permit wholesale dismissal of independent federal damages claims.**

The proposed complaint did not seek a divorce, alimony award, child-custody decree, modification of timesharing, enforcement of a parenting plan, or review of a state judgment. It expressly disclaimed those forms of relief and limited the case to independent conduct by individual state actors. The federal question is lack of process and alleged retaliation by state actors, not whether a family-court order was correctly enforced. Doc. 12-1, PageID 104-05, ¶¶ 2-3, 13-15.

*Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992), confines the domestic-relations exception to issuance or modification of divorce, alimony, and child-custody decrees. *Stone v. Wall*, 135 F.3d 1438, 1441-42 (11th Cir. 1998), reversed abstention where a damages action involving a child did not require the federal court to issue or modify a custody decree. Related state proceedings do not create a general license to refuse federal jurisdiction. See *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77-78 (2013). And *Behr v. Campbell*, 8 F.4th 1206, 1212-13 (11th Cir. 2021), requires federal claims arising near family-court proceedings to be analyzed claim by claim rather than dismissed wholesale based on their context.

*Ingram v. Hayes*, 866 F.2d 368 (11th Cir. 1988), is the closest adverse authority. There, federal adjudication would have required direct entanglement

with domestic decrees and support obligations. Id. at 369-70. Doc. 12-1 seeks no comparable relief. The parenting materials matter only to the protected interest, the individual defendants' alleged notice, and the alleged absence of process. Liability rests on alleged out-of-court directives, communications, investigations, and findings.

The limiting principle is straightforward: a federal court need not supervise custody, decide who should possess the child, or police compliance with a parenting order. It may determine whether individual state actors committed an independently actionable constitutional wrong and award only relief that does not alter a domestic decree. If any phrase in the prayer was too broad, the remedy was narrowing, not denial of the entire amendment as moot.

### C. Claim splitting could at most narrow overlapping allegations; it did not dispose of later acts or the entire proposed complaint.

Both *Vanover v. NCO Financial Services, Inc*., 857 F.3d 833, 841-43 (11th Cir. 2017), and *Kennedy v. Floridian Hotel, Inc*., 998 F.3d 1221, 1236 (11th Cir. 2021), require comparison of the parties or their privies and the transaction or series of transactions. The R&R compared the pending state case to Doc. 6. Doc. 10, PageID 81-83. It did not compare the state case to Doc. 12-1.

That omission matters. Doc. 12-1 removed DCF, the state-law count, and the Sheriff/Monell theory; changed the capacity and theory of liability; limited the relief; and added the July 30, 2025 Favorin investigation and verified finding. Doc.

12-1, PageID 114, ¶¶ 86-89; PageID 121-22, ¶¶ 126-132. *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 328 (1955), confirms in the preclusion context that later conduct and later claims cannot simply be treated as extinguished by earlier litigation. *Griffin v. County School Board*, 377 U.S. 218, 226-27 (1964), confirms that Rule 15(d) permits supplementation based on later events when necessary for orderly adjudication.

The strongest point for affirmance is that the February-April allegations overlap with a pending state action against several of the same actors. Appellant does not ask the Court to ignore that overlap. The narrower answer is that overlap required an actual comparison and a tailored remedy. The district court could dismiss, stay, sever, or require omission of duplicative components. It could not treat that possible overlap as a reason to avoid Rule 15 analysis of the entire proposed pleading, including later events.

### D. Qualified immunity does not support blanket affirmance on a pleading the district court never screened.

Qualified immunity is a serious potential defense, and Appellant does not ask this Court to hold that every defendant necessarily loses it. But it was not the R&R's basis for dismissal, the district court made no defendant-specific immunity ruling, and the proposed complaint alleges materially different conduct by different actors.

Any analysis must identify the precise right, the defendant's authority, what that defendant allegedly knew, the act attributed to that defendant, and the time of the act. The asserted right is narrow: not a federal right to prevail in a visitation dispute, but a procedural right not to have state actors use government authority to interfere with an existing parent-child relationship without adequate process or exigent grounds. *Doe v. Kearney*, 329 F.3d 1286, 1293-95 (11th Cir. 2003), recognized the protected parental interest and the constitutional significance of process and exigency in Florida child-protection action.

The proposed complaint's strongest allegations concern Booker and Battieste. Possible immunity as to Johnson, Favorin, or Doe defendants would not establish that the entire proposed amendment was futile. Nor is this a *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), claim based on passive failure to protect against private harm. Doc. 12-1 alleges affirmative use or communication of state authority as the causal mechanism.

The Court may leave all immunity issues open on remand. The narrow disposition is to require the district court to identify an operative pleading and conduct the defendant-by-defendant analysis that never occurred.

### E.   Even if the Court accepts part of an alternative ground, the proper remedy remains a narrowed remand.

The Court need not hold that domestic-relations doctrine, claim splitting, qualified immunity, or sanctions principles can never narrow the proposed claims.

Those defenses may matter on remand. They do not make the error harmless because each depends on the pleading the court refused to evaluate. Even if some allegations are duplicative or some defendants are immune, vacatur remains necessary so the district court can permit and screen a narrowed operative complaint.

Nor could the judgment be affirmed as a sanction or docket-management dismissal on this record. *Betty K* requires a clear pattern of delay or willful contempt and an express or implicit finding that lesser sanctions would not suffice before a dismissal with prejudice may stand. 432 F.3d at 1337-39. *McNair* preserved that heightened rule for with-prejudice or effectively merits-ending dismissals while holding that a true dismissal without prejudice is materially different. 143 F.4th at 1308-09. *Houston* likewise treats a nominally without-prejudice dismissal as a dismissal with prejudice when practical consequences probably bar further litigation, and applies the stricter last-resort standard. 887 F.3d at 1279-80. The April 15 order did more than enforce a deadline: it denied the pending amendment as moot, dismissed without leave, and closed the case without findings that Appellant acted willfully, contumaciously, or in bad faith, and without any analysis of lesser alternatives.

### III. DOC. 12-1 WAS NOT FUTILE IN ITS ENTIRETY BECAUSE THE BOOKER/BATTIESTE ALLEGATIONS WERE PLAUSIBLE ENOUGH TO REQUIRE SCREENING.

**A.    At the amendment stage, the allegations are tested for plausibility, not proof.**

Futility follows the Rule 12(b)(6) standard. *Silberman*, 927 F.3d at 1132-33. The court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Mitchell*, 112 F.3d at 1490. Appellant therefore did not need to prove every proposed count or establish that every proposed defendant was equally liable. He needed to plead at least one claim that might survive.

*Troxel v. Granville*, 530 U.S. 57, 65-66 (2000), *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), and *Stanley v. Illinois*, 405 U.S. 645, 651-58 (1972), recognize the protected parental interest in the care, custody, and management of children. *Doe* applies that principle to Florida child-protection officials. 329 F.3d at 1293-95.

**B.    The procedural-due-process claim pleaded notice, affirmative conduct, causation, and injury as to Booker and Battieste.**

The initial condition was a protected parent-child interest reflected in an existing order. Doc. 12-1, PageID 106, ¶¶ 16-17. Booker allegedly received actual notice when Appellant showed him the parenting materials before Booker directed, caused, encouraged, or confirmed withholding. Id., PageID 106-07, ¶¶ 21-26. Battieste allegedly received the same materials, acknowledged their substance, and said DCF would communicate that understanding to law enforcement. Id., PageID 107-08, ¶¶ 29-37. The claim is lack of process from state-actor conduct, not federal enforcement of that order.

The pleaded choice and mechanism were equally specific. After Appellant complained to Battieste in Booker's presence, Booker allegedly told officers that the child should be kept from Appellant and made additional adverse statements. Id., PageID 107-09, ¶¶ 31-48. Battieste later allegedly communicated that the child should be withheld based on a supposed investigation before that investigation formally opened. Id., PageID 110-12, ¶¶ 55-74. The mother and officers allegedly identified DCF's communications as the reason for withholding. Id., PageID 108-09, ¶¶ 34-45.

The resulting injury was direct: the child was allegedly withheld during the February 18, 19, and 28 periods, causing loss of parent-child time and injury to the relationship. Id., PageID 109-11, ¶¶ 49-66; PageID 115, ¶ 96. The direct causal chain is protected interest, actual notice, alleged DCF directive or confirmation, reliance by the mother or law enforcement, and loss of parent-child time without adequate process.

The mother's participation does not sever the pleaded chain at this stage because Doc. 12-1 alleges that she and law enforcement acted in reliance on DCF authority. That is an inference from alleged communications, not an assertion that every act by the mother or officers is attributable to Booker or Battieste.

Battieste's alleged liability is also not respondeat superior. The proposed complaint attributes to her personal notice, direct meetings and communications,

confirmation of Appellant's rights, acknowledgment that Booker's conduct was wrong, later alleged withholding communications, and a statement reflecting hostility toward Appellant's complaints. Id., PageID 107-13, ¶¶ 29-37, 52-80; PageID 116, ¶¶ 100-103.

### C. The strongest opposing theory – private conduct or failure to protect – does not match the proposed allegations.

*DeShaney* held that the Due Process Clause does not impose a general duty on the State to protect a person from private violence. 489 U.S. at 195-97. The proposed complaint does not rely on a general protective duty, negligence, or passive inaction. It alleges that identified state actors affirmatively used or communicated DCF authority in a way that caused, confirmed, or perpetuated the withholding itself.

The requested rule is correspondingly narrow. A claim is plausible only where the complaint alleges: (1) an existing protected parent-child interest; (2) actual notice to the individual defendant; (3) an affirmative use of state authority without adequate process or exigent grounds; (4) direct and foreseeable causation; and (5) a cognizable deprivation. The rule excludes negligence, generalized notice, passive failure to help, independent private conduct, enforcement disputes over parenting orders, and unforeseeable intervening acts. Doc. 12-1 alleged each condition as to Booker and Battieste sufficiently to require screening.

### D. The First Amendment retaliation allegations against Booker and Battieste also required analysis.

*Bennett v. Hendrix*, 423 F.3d 1247, 1250-54 (11th Cir. 2005), holds that government officials may not retaliate against a citizen for protected speech and applies an ordinary-firmness standard. *Keeton v. Anderson-Wiley*, 664 F.3d 865, 878 (11th Cir. 2011), identifies protected activity, adverse action, and causation as the relevant elements.

As to Booker, Doc. 12-1 alleged protected complaints made directly to Battieste in Booker's presence, Booker's knowledge of the complaint, an immediate reversal of the corrective position Battieste had communicated, alleged instructions to law enforcement to keep the child from Appellant, and additional negative statements. Doc. 12-1, PageID 107-09, ¶¶ 31-48; PageID 118-19, ¶¶ 111-117.

As to Battieste, it alleged repeated complaints to DCF leadership and the Inspector General, her knowledge of those complaints, later adverse communications, and her statement: "Even if you are innocent, how you are going about it is a problem, and I do not like it." Id., PageID 110-13, ¶¶ 52-80; PageID 119-20, ¶¶ 118-120. Those allegations permit, at minimum, a reasonable pleading-stage inference of protected activity, knowledge, adverse conduct, and retaliatory motive.

**E.    Possible weakness in other theories was severable and could not establish futility of the entire amendment.**

The district court could determine on remand that the substantive-due-process count does not meet the conscience-shocking standard, that the allegations against Johnson or Doe defendants require greater specificity, or that Favorin's retaliation theory lacks sufficient knowledge or causation allegations. Those possible rulings would not eliminate the stronger Booker/Battieste claims.

The Favorin allegations also served an independent procedural function: they showed that Doc. 12-1 contained later events outside the R&R's central February-April comparison. To the extent the verified-finding process theory requires a more concrete protected interest or consequence, the court can require amendment or dismiss that count. *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978), nevertheless confirms that denial of procedural due process is itself a legally protected injury even when compensatory damages require additional proof.

Family-court testimony should likewise remain context rather than a separate damages theory. The proposed liability theory rests on out-of-court directives, communications, investigative conduct, and findings – not damages based on testimony, review of family-court rulings, or federal supervision of domestic proceedings.

**F.**     **Because at least one claim might proceed, the district court had to permit or evaluate a narrower operative pleading.**

This Court need not decide that every count survives or that any defendant ultimately lacks qualified immunity. The point is narrower: because at least one claim might proceed, Doc. 12-1 was not shown futile in its entirety. Vacatur and remand will allow the district court to identify the operative pleading, eliminate duplicative or deficient components, and address defenses under the correct standards.

**CONCLUSION**

The precise relief is vacatur and remand. The Court should instruct the district court to evaluate Doc. 12-1 under Rule 15(a)(2), Rule 15(d) if applicable, Rule 72(b)(3), 28 U.S.C. § 636(b)(1), and 28 U.S.C. § 1915(e)(2)(B). Alternatively, remand should permit Appellant to file a narrowed second amended complaint limited to non-duplicative individual-capacity federal claims. The Court need not decide ultimate liability or immunity in the first instance.

Respectfully submitted,

_____

JEREMIAH VERNON WEBB

Plaintiff-Appellant, pro se

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 5,232 words according to the word-count method used to prepare this document and does not exceed 13,000 words. This brief also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in Times New Roman, a proportionally spaced serif typeface, in 14-point font.

_____

JEREMIAH VERNON WEBB
Plaintiff-Appellant, pro se

## CERTIFICATE OF SERVICE

I certify that on July 10th, 2026, I filed the foregoing with the Clerk of the United States Court of Appeals for the Eleventh Circuit using the Court's CM/ECF system or another authorized filing method. To the best of my knowledge, no appellee counsel has appeared in this appeal for service by Appellant. Appellant will promptly serve any appearing counsel or party as directed by the Court or required by the applicable rules.

_____

JEREMIAH VERNON WEBB
Plaintiff-Appellant, pro se
