# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

JEREMIAH VERNON WEBB,
*Plaintiff-Appellant,*

v.

FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES; DAVID BOOKER;
DEKESHA J. BATTIESTE; TONGE JOHNSON; JOHN DOES 1-99; and
JANE DOES 1-99,
*Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Florida
D.C. Case No. 8:25-cv-01990-SDM-LSG

# APPENDIX OF APPELLANT JEREMIAH VERNON WEBB

VOLUME I OF I

JEREMIAH VERNON WEBB
Plaintiff-Appellant, pro se
11121 Lost Creek Terrace, Unit 101
Lakewood Ranch, Florida 34211
801-755-9600
jeremiah@shoponfire.com

# INDEX TO APPENDIX

| TAB | DOCUMENT | PDF PAGE |
|---|---|---|
| DOCKET | **District Court Docket Sheet through June 1, 2026**<br>District court docket sheet | 3 |
| 1 | **Complaint**<br>District Court Doc. 1 | 5 |
| 6 | **First Amended Complaint**<br>District Court Doc. 6; PageID 52-62 | 15 |
| 10 | **Report and Recommendation**<br>District Court Doc. 10; PageID 76-88 | 27 |
| 11 | **Objections to Report and Recommendation**<br>District Court Doc. 11 | 41 |
| 12 | **Motion for Leave to Amend Complaint**<br>District Court Doc. 12 | 50 |
| 12-1 | **Proposed Verified Second Amended Complaint**<br>District Court Doc. 12-1; PageID 103-124 | 57 |
| 14 | **Order Adopting Report and Recommendation and Denying Leave to Amend as Moot**<br>District Court Doc. 14; PageID 127-128 | 80 |
| 16 | **Notice of Appeal**<br>District Court Doc. 16 | 83 |
| 19 | **Transcript Information Form / No-Transcript Certificate**<br>District Court Doc. 19; PageID 148-150 | 86 |
| 20 | **Order Granting Leave to Proceed In Forma Pauperis on Appeal**<br>District Court Doc. 20; PageID 151-152 | 90 |

The tab numbers correspond to the original district-court document numbers. For electronic filing, separator pages are used in place of physical indexing tabs.

# TAB DOCKET

## DISTRICT COURT DOCKET SHEET THROUGH JUNE 1, 2026

District court docket sheet

D.C. Case No. 8:25-cv-01990-SDM-LSG

# DISTRICT COURT DOCKET SHEET THROUGH JUNE 1, 2026

Webb v. Florida Department of Children and Families, No. 8:25-cv-01990-SDM-LSG (M.D. Fla.)

| Date Filed | # | Docket Text |
|---|---|---|
| 07/28/2025 | 1 | COMPLAINT against Dekesha Battieste, David Booker, Cliff Cespedes, Deadra Supervisor, Diocese of Venice in Florida, Jane Does 1-99, John Does 1-99, Florida Department of Children and Families (DCF), Incarnation Parish in Sarasota, Inc., Jennifer Fulvia Meister, Mariah Piper, Sarasota County, Sarasota County Sheriff's Office, Jason Smith, Lenishia Twenty, Amy Yager with Jury Demand filed by Jeremiah Vernon Webb. (e-portal) (Attachments: # 1 Civil Cover Sheet) (JKB) (Entered: 07/29/2025) |
| 07/28/2025 | 2 | MOTION to Proceed In Forma Pauperis by Jeremiah Vernon Webb. (e-portal) (JKB) Motions referred to Magistrate Judge Lindsay S. Griffin. (Entered: 07/29/2025) |
| 07/31/2025 | 3 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Jeremiah Vernon Webb. (e-portal) (JKB) (Entered: 07/31/2025) |
| 07/31/2025 | 4 | NOTICE of a related action per Local Rule 1.07(c) by Jeremiah Vernon Webb. Related case(s): Yes. (e-portal) (JKB) (Entered: 07/31/2025) |
| 07/31/2025 | 5 | PROPOSED summons to be issued by Jeremiah Vernon Webb. (eportal) (MCB) (Entered: 08/01/2025) |
| 10/29/2025 | 6 | FIRST AMENDED COMPLAINT against Dekesha Battieste, David Booker, Jane Does 1-99, John Does 1-99, Florida Department of Children and Families (DCF), Tonge Johnson with Jury Demand. Terminating Diocese of Venice in Florida (as operator of Incarnation Catholic School), Incarnation Parish in Sarasota, Inc. (as operator of Incarnation Catholic School), Jennifer Fulvia Meister (in her individual and official capacity as former DCF General Counsel and attorney for Ligia Cervera n/k/a Hall), Mariah Piper (In her Individual Capacity and Official Capacity), Sarasota County (as the entity responsible for DCF operations in Sarasota), Sarasota County Sheriff's Office, Jason Smith (In his Individual Capacity and Official Capacity), Lenishia Twenty (In her Individual Capacity and Official Capacity), Amy Yager (in her individual and official capacity as Principal of Incarnation Catholic School), Cliff Cespedes (In his Individual Capacity and Official Capacity) and Deadra Supervisor (in her individual and official capacity as a DCF Supervisor) filed by Jeremiah Vernon Webb. (Attachments: # 1 Civil Cover Sheet, # 2 Mailing Envelope)(AW) Modified text on 10/30/2025 (AW). (Entered: 10/30/2025) |
| 10/29/2025 | 7 | NOTICE of filing First amended Complaint for Damages by Jeremiah Vernon Webb re 6 Amended Complaint (Attachments: # 1 Mailing Envelope)(AW) (Entered: 10/30/2025) |
| 10/29/2025 | 8 | MOTION for Leave to file electronically (CM/ECF Access), by Jeremiah Vernon Webb. (Attachments: # 1 Mailing Envelope)(AW) (Entered: 10/30/2025) |
| 11/03/2025 | 9 | ENDORSED ORDER on the pro se plaintiff's motion, Doc. 8, for CM/ECF e-filing privileges. The plaintiff's motion is DENIED-IN-PART because he fails to identify extenuating circumstances warranting CM/ECF access. The motion is GRANTED-IN-PART to the extent that the plaintiff will receive electronic notice of CM/ECF filings. The Clerk is directed to add the plaintiff's e-mail address to the docket (jeremiah@shoponfire.com) and to send notices of electronic filing to this e-mail address. Because the plaintiff requests to receive notice of filings by e-mail, the Clerk's office will no longer mail paper copies. Each notice of electronic filing will contain a hyperlink that allow a litigant to view the document for the first time for free. The hyperlink expires after the earlier of two events: the first use or fifteen days after the notice is e-mailed. An individual must access PACER to view a document after the hyperlink has expired and must continue to file papers in person or by mail. The "Guide for Proceeding Without a Lawyer" on the court's web site provides instructions on how to register for PACER. Signed by Magistrate Judge Lindsay S. Griffin on 11/3/2025. (NGB) (Entered: 11/03/2025) |
| 03/13/2026 | 10 | REPORT AND RECOMMENDATION: recommending that the District Court deny the motion to proceed in forma pauperis, Doc. 2; dismiss the amended complaint without leave to amend, Doc. 6; terminate any pending motion; and close the case. Signed by Magistrate Judge Lindsay S. Griffin on 3/13/2026. (NGB) (Entered: 03/13/2026) |
| 03/17/2026 | 11 | OBJECTION to 10 Report and Recommendations by Jeremiah Vernon Webb. (LSS) (Entered: 03/18/2026) |
| 03/17/2026 | 12 | MOTION to Amend 6 Amended Complaint by Jeremiah Vernon Webb. (Attachments: # 1 Second Amended Complaint)(LSS) (Entered: 03/18/2026) |
| 03/17/2026 | 13 | SWORN AFFIDAVIT and Declaration of Financial Inability to Prepay Fees of Jeremiah Vernon Webb by Jeremiah Vernon Webb. (LSS) (Entered: 03/18/2026) |
| 04/15/2026 | 14 | ORDER adopting the report (Doc. 10) and recommendation; denying the motion (Doc. 2) to proceed in forma pauperis; denying as moot the motion (Doc. 12) for leave to amend the complaint. Signed by Judge Steven D. Merryday on 4/15/2026. (CJO) (Entered: 04/15/2026) |
| 04/16/2026 | 15 | NOTICE of Local Rule 1.11(e), which provides that, unless an order states another time, a seal under Rule 1.11 expires ninety days after a case is closed and all appeals are exhausted. To prevent the content of a sealed item from appearing on the docket after the seal expires, a party or interested non-party must move for relief before the seal expires. (Signed by Deputy Clerk). (JOS) (Entered: 04/16/2026) |
| 04/21/2026 | 16 | NOTICE OF APPEAL as to 14 Order on Motion to Proceed In Forma Pauperis Order on Report and Recommendations Order on Motion to Amend / Correct / Modify / Supplement, by Jeremiah Vernon Webb. Filing fee not paid. ***Case Stayed. (LSS) (Entered: 04/23/2026) |
| 04/21/2026 | 17 | MOTION to Appeal In Forma Pauperis by Jeremiah Vernon Webb. (LSS) (Entered: 04/23/2026) |
| 04/23/2026 | 18 | TRANSMITTAL of initial appeal package to the U.S. Court of Appeals - 11th Circuit re 16 Notice of Appeal. In Forma Pauperis Motion filed. (LSS) (Entered: 04/23/2026) |
| 04/27/2026 | | ***11th Circuit Case Number: 26-11374-B for 16 Notice of Appeal filed by Jeremiah Vernon Webb. (MCB) (Entered: 04/27/2026) |
| 05/11/2026 | 19 | TRANSCRIPT information form filed by Jeremiah Vernon Webb re 16 Notice of Appeal. USCA number: 26-11374-B. No transcript(s) requested. (LSS) (Entered: 05/12/2026) |
| 06/01/2026 | 20 | ORDER granting the motion (Doc. 17) for leave to appeal in forma pauperis. Signed by Judge Steven D. Merryday on 6/1/2026. (CJO) (Entered: 06/01/2026) |

*Reformatted from the PACER docket display supplied for this appendix solely to improve legibility; docket dates, numbers, and text are reproduced from that source.*

# TAB 1

## COMPLAINT

District Court Doc. 1

D.C. Case No. 8:25-cv-01990-SDM-LSG

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION**

**JEREMIAH VERNON WEBB**,
Individually and as Next Friend of
**B.A.W., a minor**,
Plaintiffs,

**v.**

Case No.: [Assigned by Clerk]
JURY TRIAL DEMANDED

**FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES** (DCF);

**DAVID BOOKER**, in his individual and official capacity as a DCF Investigator;

**DEKESHA BATTIESTE**, in her individual and official capacity as a DCF Operations and Management Consultant II;

**"DEADRA SUPERVISOR"** (full name unknown), in her individual and official capacity as a DCF Supervisor;

**SARASOTA COUNTY** (as the entity responsible for DCF operations in Sarasota);

**JENNIFER FULVIA MEISTER**, in her individual and official capacity as former DCF General Counsel and attorney for Ligia Cervera n/k/a Hall;

**PRINCIPAL AMY YAGER**, in her individual and official capacity as Principal of Incarnation Catholic School;

**DIOCESE OF VENICE IN FLORIDA**, as operator of Incarnation Catholic School;

**INCARNATION PARISH IN SARASOTA, INC**., as operator of Incarnation Catholic School;

**DETECTIVE LENISHIA TWENTY**, in her individual and official capacity;

**SERGEANT JASON SMITH**, in his individual and official capacity;

**LIUTENANT MARIAH PIPER**, in her individual and official capacity;

**OFFICER CLIFF CESPEDES**, in his individual and official capacity;

**SARASOTA COUNTY SHERIFF'S OFFICE**; and

**JOHN/JANE DOES 1-99** (unknown DCF employees, school staff, law enforcement officers or others involved in the misconduct),
Defendants.

Case 8:25-cv-01990-SDM-LSG   Document 1   Filed 07/28/25   Page 2 of 9 PageID 2

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION**

**INTRODUCTION**

**COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983, STATE LAW CLAIMS, AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiffs JEREMIAH VERNON WEBB, individually and as Next Friend of minor child B.A.W., proceeding pro se, and files this Complaint against Defendants pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, and supplemental state law claims. Plaintiff seeks compensatory damages, punitive damages, declaratory and injunctive relief, and attorney fees and costs.

**I. JURISDICTION AND VENUE**

This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a) as they form part of the same case or controversy. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in Sarasota County, Florida, and Defendants reside or operate within this district.

**II. PARTIES**

Plaintiff Jeremiah Vernon Webb is a resident of Sarasota County, Florida, and the natural father of minor child B.A.W. born 2013. Plaintiff has shared legal custody and a week-on/week-off timeshare arrangement (182.5/182.5 equal split) with Defendant Hall pursuant to a valid Florida court order from May 25 2022.

Page **2** of **9**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION**

Defendant Florida Department of Children and Families (DCF) is a state agency responsible for child welfare investigations in Florida, operating in Sarasota County. DCF is sued for its policies, customs, and practices under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Defendant Sarasota County is a municipal entity responsible for overseeing DCF operations in Sarasota and is sued for its role in *Monell* liability.

Defendant David Booker is a DCF Investigator employed by DCF in Sarasota. He is sued in his individual and official capacities for actions under color of state law.

Defendant Dekesha Battieste is an Operations and Management Consultant II (C12 and C20) with DCF in Sarasota. She is sued in her individual and official capacities.

Defendant Deadra's [Full Name Unknown] is a DCF Supervisor in Sarasota. She is sued in her individual and official capacities.

Defendant Jennifer Fulvia Meister is the former General Counsel for DCF, working for the Department of Children and Families in the Children's Legal Services division, where she prosecuted dependency and termination of parental rights cases, having served in that capacity for two and a half years, and was the attorney for Ligia Cervera n/k/a Hall in family court proceedings but has since withdrawn. She is sued in her individual and official capacities for actions under color of state law (acting in concert with DCF using her experience and tenure as General Counsel previously).

Defendant Principal Amy Yager is the Principal of Incarnation Catholic School, a school operated by the Diocese of Venice in Florida and Incarnation Parish in Sarasota, Inc. She is sued in her individual and official capacities for actions under color of state law (acting in concert with DCF).

Defendant Diocese of Venice in Florida is a religious entity operating Incarnation Catholic School and is sued for its policies and as Yager's employer.

Defendant Incarnation Parish in Sarasota, Inc. is the legal entity operating Incarnation Catholic School and is sued for its policies and as Yager's employer.

Defendants Lt. Mariah Piper, Detective Lenishia Twenty, Sergeant Jason Smith, with the Sarasota County Sheriff's Office and Officer Cliff Cespedes with the Sarasota Police Department. They are sued in their individual and official capacities for actions under color of state law.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION**

Defendant Sarasota County Sheriff's Office is a municipal entity sued for its policies under *Monell*.

John/Jane Does 1-99 are unknown individuals who participated in the misconduct and will be identified through discovery.

### III. FACTUAL ALLEGATIONS

1.    Plaintiff has joint legal custody of minor B.A.W. with 182.5 equal split and no primary parent under a court-ordered week-on/week-off timeshare. Plaintiff's weeks include February 14-21, 2025, and February 28-March 7, 2025.

2.    On February 17, 2025, Plaintiff filed a complaint with the Governor's Office of Chief Inspector General, which was forwarded to the Inspector General of DCF and the Inspector General of the Florida Department of Education (FDOE).

3.    On February 18, 2025, during Plaintiff's timeshare week, Incarnation Catholic School trespassed Plaintiff from the premises without cause after he dropped off B.A.W. that morning. When Plaintiff attempted pickup later, the school refused, citing no reason.

4.    Plaintiff immediately went to DCF/CPI headquarters in Sarasota and filed a complaint. Defendants Booker and Battieste interviewed Plaintiff, reviewed a SIPPE report on Hall showing prior issues, and explicitly stated: "We never said to withhold the child. Go get your kid. If you need the cops, call them and call Booker." Battieste provided Booker's business card. Plaintiff asked if they would "throw [him] under the bus," and they assured him no. Booker texted Plaintiff that he was at the school as Plaintiff was the whistleblower and that "the school was not cooperating."

5.    Later on February 18, 2025, at Hall's residence, police (Officers Plumley and Howell) arrived. Bodycam footage shows Hall calling Booker's personal cell from her personal cell. Booker instructed the officers to let Hall keep B.A.W., contradicting his earlier statement to Plaintiff not just

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION**

thirty minutes prior. Officers complied, denying Plaintiff custody. Early police reports from February 18, 2025, and February 28, 2025, at Hall's residence indicate Hall mentioned the names of DCF supervisors, which she could not have known without assistance from Defendant Meister, who was then acting as Hall's attorney but previously as DCF General Counsel.

6.    Plaintiff contacted Booker and Battieste via calls, texts, and emails, accusing them of lying. They ignored all communications.

7.    On February 19, 2025, the school and Hall again withheld B.A.W., citing "DCF/Booker said to."

8.    This withholding continued until February 27, 2025, when Battieste called Plaintiff, denying any withholding directive: "We told the cops and Hall to follow the court order." She promised to call Hall and instruct compliance starting February 28 (Plaintiff's next week). Battieste did call Hall then called me back to confirm. Hall's emergency motion for full custody (filed February 20, citing Booker's directive) was denied that day.

9.    On February 28, 2025, at Incarnation Catholic School, Yager and Hall withheld B.A.W., citing DCF. Deputy Vimara Gorsuch was on scene and confirmed with DCF supervisor Deadra (full name unknown) twice that the DCF directive was to follow the court order. Yager remained defiant after being ordered to walk minor child B.A.W. to Plaintiff (Jeremiah Vernon Webb and as next friend of minor child B.A.W.), but Yager refused and released the child to Hall despite the court order directing release to Webb. Earlier Yager called 911 and defamed Plaintiff without evidences saying again that DCF said to.

10.    At Hall's residence later that day, Officer Cliff Cespedes arrived, called Battieste, who mentioned a pending investigation against Plaintiff

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION**

(investigation against Plaintiff did not currently exist) and instructed not to enforce the order. This contradicted Battieste's February 27 call.

11.  Detective Lenishia Twenty and Sergeant Jason Smith refused to pursue a criminal complaint filed by Plaintiff against the Diocese of Venice, instead turning on Plaintiff by forcing him into a second-floor deposition room after he attempted to drop off new evidence against the Diocese. During the recorded deposition, Smith stated "he could interpret the law", not just enforce it. Twenty and Smith defended DCF's Booker and Battieste, coordinated against Plaintiff, refused to pursue charges, and attempted to persuade the State Attorney's Office not to arrest Hall on the single count of § 787.03 charge filed by Sarasota Police Department.

12.  On March 17/18, 2025, Sarasota PD filed one count against Hall under Fla. Stat. § 787.03 for custody interference.

13.  On March 17/18, 2025, DCF opened a sham investigation against Plaintiff (supervised by Battieste), alleging intimidation during goodnight calls. Battieste told Plaintiff his "fighting so hard" made him "look guilty." Cespedes confirmed this was planned since February 28 then helped them do so. The State Attorney delayed Hall's arrest pending this investigation. These actions occurred under the tutelage and assistance of Defendant Meister drawing from her tenure in terminating parental rights as DCF General Counsel and later in the Office of Attorney General. She used her intimate knowledge to harm Plaintiff(s).

14.  Plaintiff produced a 2024 DCF complaint against him where he was cleared of all allegations, deemed a good dad, and Hall was labeled a parental alienator. When produced to Battieste after her sham investigation, she covered it up and refused to include it in her new fake report against Plaintiff.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION**

15.   Plaintiff produced 15 recorded "goodnight" phone calls between him and B.A.W., proving no intimidation as alleged. Battieste covered those up as well and continued her fake investigation against Plaintiff.

16.   Defendants' lies, fabrications, and flip-flopping (telling Plaintiff one thing, others another) caused unlawful seizure of B.A.W. and deprivation of Plaintiff's familial rights, mirroring misconduct in *Hardwick v. County. of Orange*, 980 F.3d 733 (9th Cir. 2020) (social workers' lies violated parental rights).

17.   DCF's policies of deliberate indifference to training/supervision enabled this, as in *Monell*.

## IV. CAUSES OF ACTION

### Count 1: Violation of 14th Amendment Due Process (Familial Association) – 42 U.S.C. § 1983

(Against Individual Defendants Booker, Battieste, Deadra, Yager, Piper, Twenty, Smith, Cespedes)

Parents have a fundamental liberty interest in the companionship, care, custody, and management of their children under the 14th Amendment. *Troxel v. Granville*, 530 U.S. 57 (2000); *Santosky v. Kramer*, 455 U.S. 745 (1982). Defendants, acting under color of state law, intentionally fabricated evidence, made misrepresentations, and suppressed facts (including the 2024 DCF clearance and recorded calls) to interfere with Plaintiff's custody, causing separation from B.A.W. without due process or justification. This shocked the conscience and was not narrowly tailored to a compelling interest. *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000); *Hardwick v. Cnty. of Orange*, 844 F.3d 1112 (9th Cir. 2017) (fabrications in child proceedings violate rights). Proximate cause: Loss of custody, emotional distress. No qualified immunity due to malice/deliberate indifference.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION**

### Count 2: Violation of 4th Amendment (Unreasonable Seizure of Child) – 42 U.S.C. § 1983

(Against Individual Defendants)

The 4th Amendment prohibits unreasonable seizures, including of children without warrant or exigent circumstances. *Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018). Defendants' actions caused unlawful seizure of B.A.W. by withholding her based on lies, without probable cause or court order modification. Similar to *Hardwick*, where fabrications led to removal.

### Count 3: Monell Liability – 42 U.S.C. § 1983

(Against DCF, Sarasota County, Sarasota County Sheriff's Office, Diocese of Venice in Florida, Incarnation Parish in Sarasota, Inc.)

Defendants' policies/customs of inadequate training/supervision on truthful investigations, parental rights, and custody enforcement were the moving force behind violations. *Monell*, 436 U.S. 658. Deliberate indifference: No discipline for lies; pattern of flip-flopping and evidence suppression (evidenced by HRW report on FL child welfare biases). Ratification: Supervisors (Battieste, Smith) endorsed misconduct.

### Count 4: State Law – Interference with Custody (Fla. Stat. § 787.03 Civil Analog/Intentional Tort)

(Against All Defendants)

Defendants intentionally interfered with Plaintiff's custodial rights, violating Fla. Stat. § 787.03 (criminal interference creates civil duty). Proximate harm: Separation from child for 156+ days and counting.

### V. PRAYER FOR RELIEF

WHEREFORE Plaintiff requests:

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION**

• Compensatory damages: $5,000,000 for emotional, economic harm.

• Punitive damages against individuals for malice.

• Declaratory judgment: Actions unconstitutional.

• Injunction: Enjoin DCF from fabrications; require training.

• Attorney fees/costs under 42 U.S.C. § 1988.

• Jury trial.

Respectfully submitted on July 28th 2025

Jeremiah Vernon Webb

**VERIFICATION**

Under penalty of perjury, I declare that the foregoing is true and correct.

Jeremiah Vernon Webb

Pro se Litigant and Next Friend to
Minor Child, B.A.W.
11121 Lost Creek Terr 101,
Lakewood Ranch, FL 34211
jeremiah@shoponfire.com | (801) 755-9600

# TAB 6

## FIRST AMENDED COMPLAINT

District Court Doc. 6; PageID 52-62

D.C. Case No. 8:25-cv-01990-SDM-LSG

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JEREMIAH VERNON WEBB,

Plaintiff,


v.                                          Case No. 8:25-cv-01990-SDM-LSG


FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES;

DAVID BOOKER; DEKESHA J. BATTIESTE; TONGE JOHNSON;

and JOHN and JANE DOE(S),

Defendants.

---

# FIRST AMENDED COMPLAINT FOR DAMAGES UNDER 42 U.S.C. §1983 AND FLORIDA LAW

Plaintiff, Jeremiah Vernon Webb ("Plaintiff"), appearing *pro se*, respectfully files this First Amended Complaint against the above-named Defendants and alleges as follows:

## I. JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. §1983, for deprivation of rights secured by the Fourth and Fourteenth Amendments.

2. Jurisdiction is conferred by 28 U.S.C. §§1331 and 1343(a)(3). Supplemental jurisdiction exists over related state-law claims under 28 U.S.C. §1367.

3. Venue is proper in this District under 28 U.S.C. §1391(b), as all events giving rise to these claims occurred in Sarasota County, Florida, within the Middle District of Florida.

## II. NON-DOMESTIC RELATIONS DISCLAIMER

1. Plaintiff seeks no modification of any child custody, visitation, or state-court orders.

2. This action concerns only federal constitutional violations and related state torts properly within the jurisdiction of this Court. See *Rash v. Rash*, 173 F.3d 1376 (11th Cir. 1999); *Carver v. Carver*, 954 F.2d 1573 (11th Cir. 1992).

## III. PARTIES

4. Plaintiff Jeremiah Vernon Webb is a resident of Sarasota County, Florida.

5. Defendant David Booker was, at all times relevant, an investigator employed by the Florida Department of Children and Families ("DCF"), acting under color of state law.

6. Defendant Dekesha J. Battieste was, at all times relevant, a supervisor employed by DCF, acting under color of state law.

7. Defendant Sarasota County Sheriff's Office ("SCSO") is a local governmental entity within Sarasota County responsible for its deputies' acts under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). See also *Freyre v. Chronister*, 910 F.3d 1371 (11th Cir. 2018) (Sheriff's Office not an arm of the State when conducting child welfare investigations).

8. Defendant Florida Department of Children and Families ("DCF") is a state agency, sued only under Florida law (Count III), consistent with the limited waiver

of sovereign immunity in Fla. Stat. §768.28.

9. Defendants John and Jane Does 1–10 are individuals whose identities are presently unknown. On information and belief, they were employees, contractors, or agents of DCF or SCSO acting under color of law. Plaintiff will amend this pleading to substitute their names when discovered.

## IV. FACTUAL ALLEGATIONS

10. Between February and April 2025, Plaintiff was the lawful custodial parent of his minor child pursuant to a valid Florida court order.

11. During this time, Defendants Booker and Battieste initiated and directed a child welfare investigation targeting Plaintiff.

12. Without probable cause, exigent circumstances, or a judicial order, Defendants unlawfully interfered with Plaintiff's custodial rights by instructing others not to release his child to him.

13. Defendants intentionally fabricated or omitted material facts in official records and communications to justify their unlawful interference.

14. Plaintiff repeatedly requested the return of his child and compliance with court orders, but DCF and SCSO employees refused to act, despite knowing his rights were valid.

15. These actions were deliberate, malicious, and performed under color of state law.

16. As a direct and proximate result, Plaintiff was deprived of his child's companionship and suffered emotional distress, reputational harm, and financial damages.

## V. COUNT I – VIOLATION OF FOURTEENTH AMENDMENT (42 U.S.C. §1983)

### (Against Defendants Booker, Battieste, SCSO, and Does 1–10)

17. Plaintiff re-alleges paragraphs 1–16.

18. Plaintiff possesses a fundamental liberty interest in the care, custody, and companionship of his child, protected by the Fourteenth Amendment.

19. Defendants, acting under color of law, intentionally deprived Plaintiff of this right without due process by fabricating evidence, withholding his child, and refusing to honor lawful custody.

20. Such conduct constitutes arbitrary and conscience-shocking action prohibited by the Fourteenth Amendment. See *Doe v. Kearney*, 329 F.3d 1286 (11th Cir. 2003); *Bilal v. Wilkins*, 16-11722 (11th Cir. 2020).

21. The constitutional right to familial integrity was clearly established at all times relevant. *Hernandez v. Fla. Dep't of Child. & Fams.*, 825 F. App'x 667 (11th Cir. 2020).

22. Defendants' actions caused Plaintiff severe emotional, psychological, and economic harm.

**Relief Sought (Count I):** Plaintiff requests judgment for compensatory and punitive damages, costs, and attorneys' fees under 42 U.S.C. §1988, and all other relief this Court deems just.

## VI. COUNT II – VIOLATION OF FOURTH AMENDMENT (42 U.S.C. §1983)

### (Against Defendants Booker, Battieste, SCSO, and Does 1–10)

23. Plaintiff re-alleges paragraphs 1–16.

24. The Fourth Amendment protects against unreasonable seizures of persons, including unlawful restraint or withholding of a child without judicial order, probable cause, or exigent circumstances.

25. Defendants, under color of law, unlawfully seized Plaintiff's child and denied contact absent any lawful basis.

26. No reasonable officer could believe this conduct lawful. See *Hardwick v. Cnty. of Orange*, 844 F.3d 1112 (11th Cir. 2017); *Foy v. Holston*, 94 F.3d 1528 (11th Cir. 1996).

27. Defendants' acts constituted a violation of clearly established Fourth Amendment rights as recognized in *Doe v. Kearney*, 329 F.3d 1286 (11th Cir. 2003).

28. As a direct and proximate result, Plaintiff suffered loss of parental companionship, mental anguish, and financial damages.

**Relief Sought (Count II):** Plaintiff seeks compensatory and punitive damages, costs, and reasonable attorneys' fees under 42 U.S.C. §1988, and such further relief as this Court deems proper.

## VII. COUNT III – INTENTIONAL INTERFERENCE WITH CUSTODY (FLORIDA LAW)

### (Against Defendants DCF, Booker, and Battieste)

29. Plaintiff re-alleges paragraphs 1–16.

30. Plaintiff had a valid and enforceable custodial right under a Florida court order.

31. Defendants intentionally and without lawful justification interfered with Plaintiff's custodial rights by directing or causing others to withhold his child.

32. Defendants acted in bad faith, with malice and reckless disregard for Plaintiff's rights.

33. Plaintiff complied with Fla. Stat. §768.28(6)(a) by providing written notice of claim to DCF and the Department of Financial Services on October 23, 2025.

34. These actions violated Florida common law as recognized in *Stone v. Wall*, 734 So.2d 1038 (Fla. 1999), which permits recovery for intentional interference with custodial rights.

35. As a direct and proximate result, Plaintiff suffered emotional distress, loss of companionship, and financial damages.

**Relief Sought (Count III):** Plaintiff seeks compensatory damages to the maximum extent allowed under Fla. Stat. §768.28(5), costs, and such further relief as the Court deems just and proper.

## VIII. DAMAGES AND RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in his favor on all counts;

B. Award compensatory and punitive damages in an amount to be determined at trial, but not less than $75,000;

C. Award costs and reasonable attorneys' fees under 42 U.S.C. §1988; and

D. Grant such other and further relief as this Court deems just and proper.

## IX. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted this 27th day of October, 2025,

_____

Jeremiah Vernon Webb, Pro Se
11121 Lost Creek Terrace, Unit 101
Bradenton, FL 34211
Email: miahwebb@yahoo.com
Phone: (801) 755-9600

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of October 2025, a true and correct copy of the First Amended Complaint for Damages under 42 U.S.C. §1983 and Florida Law and Exhibit A to the Clerk of Court (Tampa Division) and will serve copies by U.S. Mail upon each Defendant or electronically pursuant to Fed. R. Civ. P. 5(b) and Local Rule 1.08 to Counsel for DCF and its employees, including the Florida Attorney General's Office, and mailed copies to any unregistered Defendants.

Respectfully submitted,

_____

Jeremiah Vernon Webb, Pro Se
11121 Lost Creek Terrace, Unit 101
Bradenton, FL 34211
Tel: (801) 755-9600
Email: jeremiah@shoponfire.com

## SEE EXHIBIT A – SUPPORTING FEDERAL AND STATE AUTHORITY IN OPPOSITION TO DISMISSAL

## EXHIBIT A – SUPPORTING FEDERAL AND STATE AUTHORITY IN OPPOSITION TO DISMISSAL

### I. INTRODUCTION

This Exhibit demonstrates that the *First Amended Complaint* is legally sufficient under Fed. R. Civ. P. 8(a), 10(b), and 12(b)(6). Each count asserts a recognized cause of action under binding Eleventh Circuit and Florida Supreme Court precedent.

### II. COUNT I – FOURTEENTH AMENDMENT (42 U.S.C. § 1983)

#### (Familial Integrity and Substantive Due Process)

- *Doe v. Kearney*, 329 F.3d 1286 (11th Cir. 2003) - Parents have a clearly established right to familial integrity; warrantless, non-exigent removal violates due process.

- *Bilal v. Wilkins*, 16-11722, 2020 WL 6537085 (11th Cir. Nov. 9 2020) - Fabrication or suppression of evidence in child-welfare investigations states a plausible § 1983 claim.

- *Hernandez v. Fla. Dep't of Children & Families*, 825 F. App'x 667 (11th Cir. 2020) - Intentional interference with familial association without due process is actionable.

**Application:** Booker and Battieste, acting under color of law, fabricated information and interfered with lawful custody - conduct matching *Kearney* and *Bilal*. These clearly established rights defeat qualified immunity at the pleading stage.

### III. COUNT II – FOURTH AMENDMENT (42 U.S.C. § 1983)

**(Unreasonable Seizure of a Child)**

- *Hardwick v. County of Orange*, 844 F.3d 1112 (11th Cir. 2017) - Child seizure without probable cause or exigent circumstances violates the Fourth Amendment.

- *Foy v. Holston*, 94 F.3d 1528 (11th Cir. 1996) - Summary removals without exigency are unconstitutional.

- *Doe v. Kearney*, 329 F.3d 1286 (11th Cir. 2003) - DCF investigators act under color of law for § 1983.

**Application:** The Amended Complaint alleges seizure of Plaintiff's child without warrant or exigent basis - precisely the violation condemned in *Hardwick* and *Foy*. Count II states a valid Fourth Amendment claim.

## IV. COUNT III – INTENTIONAL INTERFERENCE WITH CUSTODY (FLORIDA LAW)

- *Stone v. Wall*, 734 So. 2d 1038 (Fla. 1999) - Recognizes tort of intentional interference with custody.

- *Menendez v. N. Broward Hosp. Dist.*, 537 So. 2d 89 (Fla. 1988) - Abatement, not dismissal, is proper pending notice compliance.

- *Levine v. Dade Cnty. Sch. Bd.*, 442 So. 2d 210 (Fla. 1983) - § 768.28(6)(a) notice is a condition precedent, not jurisdictional.

- Fla. Stat. § 768.28 (2025) - State's limited waiver of sovereign immunity; notice and denial required.

**Application:** Plaintiff served timely written notice on October 23 2025 (USPS Certified Nos. The corresponding USPS tracking confirmations are as follows:

1. DCF Certified Mail Tracking No. 1: 9589-0710-5270-3188-8750-61

2. DCF Certified Return Receipt Tracking No. 2: 9590-9402-9474-5069-6791-76

3. DFS Certified Mail Tracking No. 1: 9589-0710-5270-3188-8750-78

4. DFS Certified Return Receipt Tracking No. 2: 9590-9402-9474-5069-6791-83).

Allegations of malice and bad faith remove immunity under § 768.28(9)(a). Count III therefore survives dismissal.

## V. ADDITIONAL BINDING PRECEDENT

| Legal Principle | Binding Authority | Impact |
|---|---|---|
| Eleventh Amendment / DCF non-person status | *Fox v. Fla. Dep't of Children & Families*, 8:17-cv-1697-T-33AAS (M.D. Fla. June 28 2018) | DCF immune under § 1983; sued only under state law. |
| Local entity liability | *Freyre v. Chronister*, 910 F.3d 1371 (11th Cir. 2018) | Sheriff's Offices are local, not state, actors under § 1983. |
| Domestic-relations limitation | *Rash v. Rash*, 173 F.3d 1376 (11th Cir. 1999); *Carver v. Carver*, 954 F.2d 1573 (11th Cir. 1992) | Jurisdiction proper because Plaintiff seeks damages, not custody modification. |

## VI. CONCLUSION

The Amended Complaint:

1.  Satisfies Fed. R. Civ. P. 8, 10, 11, and 15 and M.D. Fla. Loc. R. 1.08;

2.  Pleads each essential element of federal and state causes of action;

3.  Identifies specific misconduct and causation; and

4.  Cites only binding, verifiable authority.

Accordingly, the pleading is not a "shotgun" complaint, states plausible claims, and is immune from dismissal under Rule 12(b)(6). At minimum, Counts I and II must proceed to discovery, and Count III independently survives under Florida's sovereign-immunity waiver.

Respectfully submitted,

Jeremiah Vernon Webb, Pro Se
11121 Lost Creek Terrace, Unit 101
Bradenton, FL 34211
Tel: (801) 755-9600
Email: jeremiah@shoponfire.com

# TAB 10

## REPORT AND RECOMMENDATION

District Court Doc. 10; PageID 76-88

D.C. Case No. 8:25-cv-01990-SDM-LSG

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JEREMIAH VERNON WEBB,

      Plaintiff,

v.                               Case No.: 8:25-cv-1990-SDM-LSG

FLORIDA DEPARTMENT OF
CHILDREN AND FAMILIES;
DAVID BOOKER; DEKESHA J.
BATTIESTE; TONGE JOHNSON;
and JOHN and JANE DOE(S),

      Defendants.

_____/

**REPORT AND RECOMMENDATION**

The *pro se* plaintiff moves under 28 U.S.C. § 1915 to proceed without pre-paying the filing fee. Doc. 2. After a careful review under 28 U.S.C. § 1915(e)(2)(B), I recommend denying the motion and dismissing the amended complaint without leave to amend.

## I.    BACKGROUND

Jeremiah Vernon Webb is the biological father of a minor child. Webb and the child's mother are parties to a domestic dispute that began in state court on March 20, 2015, and remains pending on appeal.[1] As explained in this report, Webb alleges

---

[1] *Cervera v. Webb*, No. 2015 DR 1516 NC (Fla. 12th Cir. Ct. 2015); *Webb v. Hall*, No. 2D2026-0528 (Fla. 2d DCA 2026). Judicial notice of Webb's state court cases is appropriate here. *See Mathieson v. Wells Fargo Bank, NA*, No. 8:20-cv-2728-WFJ-SPF, 2021 WL 877698, at *5 n.10 (M.D. Fla. Mar. 9,

a series of incidents beginning in February 2025 and continuing through April 2025 arising from his attempted visitation with the child. Believing that these incidents violated his rights under state and federal law, Webb initiated a series of state and federal actions, including five actions in Sarasota County Circuit Court.[2] All of the state court actions began in April 2025, and three of those actions remain open and active.[3]

In July 2025, Webb brought the controversy to federal court. This action is one of four filed by Webb in the Tampa Division. In *Webb v. Cervera*, *et al.*, filed on July 11, 2025, Webb sues the mother of his minor child; Incarnation Catholic School, its employees, and the Diocese of Venice; Florida Department of Children and Families employee Dekesha Battieste; Sarasota Police Officer Clifford J. Cespedes; and several John and Jane Does, over the incidents that occurred between February and April 2025 involving Webb's visitation with his minor child. No. 8:25-cv-1786-MSS-AAS (M.D. Fla. 2025), Doc. 6. A July 28, 2025, order dismisses the action without prejudice based on a lack of subject matter jurisdiction and "the

---

2021) (citing *Ates v. Fla.*, 794 F. App'x 929, 930 (11th Cir. 2020) (affirming district court's judicial notice of electronic state court docket)); *see also* FED. R. EVID. 201(b), (b)(2).

[2] *Webb v. Diocese of Venice in Florida, Inc., et al.*, No. 2025 CA 1640 NC (Fla. 12th Cir. Ct. 2025); *Webb v. Fla. Dep't of Child. & Fam.*, No. 2025 CA 1641 NC (Fla. 12th Cir. Ct. 2025); *Webb v. Fla. Dep't of Educ..*, No. 2025 CA 1660 NC (Fla. 12th Cir. Ct. 2025); *Webb v. Cliff Cespedes*, No. 2025 CA 1661 NC (Fla. 12th Cir. Ct. 2025); *Webb v. Sarasota Cnty. Sheriff's Off.*, No. 2025 CA 1945 NC (Fla. 12th Cir. Ct. 2025).

[3] *Webb v. Diocese of Venice in Fla., Inc.*, No. 2025 CA 1640 NC (Fla. 12th Cir. Ct. 2025); *Webb v. Fla. Dep't of Child. & Fam.*, No. 2025 CA 1641 NC (Fla. 12th Cir. Ct. 2025); *Webb v. Fla. Dep't of Educ.*, No. 2025 CA 1660 NC (Fla. 12th Cir. Ct. 2025).

domestic relations exception to federal court jurisdiction" in *Ingram v. Hayes*, 866 F.2d 369, 369 (11th Cir. 1988). No. 8:25-cv-1786-MSS-AAS, Doc. 10.

In *Webb v. Diocese of Venice in Florida, Inc.*, *et al.*, filed on July 15, 2025, Webb sues the mother of his minor child; Incarnation Catholic School, its employees, and the Diocese of Venice; Florida Department of Children and Families employee David Booker; and several John and Jane Does, over the same incidents that occurred between February and April 2025 involving Webb's visitation with his minor child. No. 8:25-cv-1835-JLB-CPT (M.D. Fla. 2025), Docs. 1, 9. An October 22, 2025, report recommends abstention under the "domestic relations exception" but suggests leave to amend. No. 8:25-cv-1835-JLB-CPT, Doc. 8. That recommendation remains pending.

In *Webb v. Florida Department of Education*, *et al.*, filed on July 23, 2025, Webb sues the mother of his minor child; Incarnation Catholic School, its employees, and the Diocese of Venice; the Florida Department of Education; numerous state and local officials; and several John and Jane Does, over the same incidents that occurred between February and April 2025 involving Webb's visitation with his minor child. No. 8:25-cv-1942-JLB-AAS (M.D. Fla. 2025), Doc. 1. An August 1, 2025, report recommends dismissing the complaint for lack of jurisdiction and abstaining "due to the strong state interest and state court competence adjudicating child custody disputes." No. 8:25-cv-1942-JLB-AAS, Doc. 7 at 4. That recommendation remains pending.

Webb filed this action on July 28, 2025, and alleges violations of both state and federal law based on the same incidents described in the earlier actions that occurred between February and April 2025 and that involved Webb's visitation with his minor child. Doc. 1. Webb files an amended complaint against the Florida Department of Children and Families and its employees David Booker, Dekesha Battieste, and Tonge Johnson, as well as the Sarasota County Sheriff's Office. Doc. 6, ¶¶ 5-8. Webb also names "John and Jane Does 1-10," who he describes as "employees, contractors, or agents of DCF or SCSO acting under color of law." Doc. 6, ¶ 9.

The amended complaint alleges that, between February and April 2025, Webb was "the lawful custodial parent of his minor child pursuant to a valid Florida court order." Doc. 6, ¶ 10. Nonetheless, Booker and Battieste began a child welfare investigation targeting Webb and "unlawfully interfered" with Webb's custodial rights by "instructing others not to release his child to him." Doc. 6, ¶ 12. Webb claims that Booker and Battieste "fabricated or omitted material facts in official records and communications to justify their unlawful interference." Doc. 6, ¶ 13. Despite Webb's repeated requests for the return of his child in compliance with the court order, DCF and Sheriff's Office employees refused to act. Doc. 6, ¶14. As a result of the defendants' actions, Webb suffered a loss of companionship, emotional distress, reputational harm, and "financial damages." Doc. 6, ¶ 16.

Webb asserts claims under 42 U.S.C. § 1983 for a violation of his rights under the Fourteenth and Fourth Amendments to the United States Constitution, as well as

a claim under Florida law for intentional interference with custodial rights. Doc. 6, ¶¶ 17-35. Webb demands damages of "not less than $75,000," plus an award of costs and attorney's fees. Doc. 6 at 6.

## II. DISCUSSION

### a. Standard of review

A litigant can sue in federal court without prepaying the filing fee if the person submits an affidavit showing that "the person is unable to pay such fees." 28 U.S.C. § 1915(a)(1); *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). After reviewing the affidavit to determine the economic status of the litigant, the court must review and dismiss if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *Martinez v. Kristi Cleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).

To state a claim, a complaint must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing the pleader is entitled to relief, and a demand for the relief sought. FED. R. CIV. P. 8(a)(1)-(3); *McCurry v. Metro. Life Ins. Co.*, 208 F. Supp. 3d 1251, 1255 (M.D. Fla. 2016). Dismissal for failure to state a claim is appropriate if the facts, as pleaded, fail to state a claim for relief that is "plausible on its face." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the complaint's legal theories lack merit or if the complaint's factual allegations fail to state a plausible claim for relief, dismissal may occur before service

of process. *Thompson v. Rundle*, 393 F. App'x 675, 678 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678); *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (per curiam).

Although *pro se* pleadings receive a liberal construction, a *pro se* plaintiff must nonetheless satisfy the pleading requirements. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Finally, "a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

### b. By filing this action while his state court actions remain pending, Webb engages in improper claim splitting.

"[A] plaintiff 'may not file duplicative complaints in order to expand their legal rights.'" *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017). Rather, a plaintiff must assert in one lawsuit all causes of action arising from a common set of facts. *Id.* at 841-42. To do otherwise results in "claim splitting," which wastes "scarce judicial resources" and undermines "the efficient and comprehensive disposition of cases." *Id.* (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)). Thus, the rule against claim splitting promotes judicial economy and shields parties from vexatious, duplicative litigation. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021) (quoting *Vanover*, 857 F.3d at 843). The claim-splitting doctrine applies if (1) a second lawsuit has been filed before the first has reached a final judgment, (2) the cases involve the same parties and their privies, and (3) the cases arise from the same transaction or series of transactions. *Id.* ("'Successive causes of action arise from the same transaction or

series of transactions when the two actions are based on the same nucleus of operative facts.'") (quoting *Vanover*, 857 F.3d at 842).

The prohibition on claim splitting applies here because Webb files a successive lawsuit involving the same parties and the same nucleus of operative fact before his first lawsuit has reached a final judgment. Webb's first lawsuit involving the defendants began on April 7, 2025, when Webb sued the Florida Department of Children and Families, Booker, Battieste, and Johnson in state court. *Webb v. Fla. Dept. of Children & Families, et al.*, No. 2025 CA 1641 NC (Fla. 12th Cir. Ct, 2025). Webb's factual allegations in that case mirror the factual allegations of the pleadings here and involve the same alleged unlawful interference with Webb's visitation between February and April 2025. *See id.*, DIN 31 at 2-4. In his initial state court complaint, Webb asserted claims for negligence, "tortious interference with civil rights" under Section 1983, intentional infliction of emotional distress, and vicarious liability. *Id.*, DIN 2 at 1-3. An amended complaint alleges the same claims except the claim under Section 1983. *Id.*, DIN 31 at 4-6. A February 16, 2026, order dismisses the amended complaint without prejudice and grants Webb thirty days to file a second amended complaint. *Id.*, DIN 138.

Thus, the state case has not reached a final judgment and remains pending subject to Webb's filing a second amended complaint. Although his amended complaint here articulates slightly different causes of action, that will not prevent a finding of improper claim splitting. *See Vanover*, 857 F.3d at 842-43 (explaining that a new action must raise new and independent claims based on new facts and that the

addition of separate causes of action does not avoid the claim-splitting doctrine).

Accordingly, by filing this action against DCF, Booker, Battieste, and Johnson while

the state action remains pending, Webb engages in improper claim splitting, which

requires dismissal.

### c. The amended complaint fails to state a claim under 42 U.S.C. § 1983 against the Sarasota County Sheriff's Office and the Florida Department of Children and Families.

Section 1983 of Title 42, United States Code, creates civil liability for any

person who, under color of state law, violates a person's constitutional rights. "The

purpose of § 1983 is to deter state actors from using the badge of their authority to

deprive individuals of their federally guaranteed rights and to provide relief to victims

if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). However, no cause

of action exists against a local government under Section 1983 "for an injury inflicted

solely by [the local government's] employees or agents." *Monell v. Dep't of Soc. Servs.*

*of City of New York*, 436 U.S. 658, 694 (1978). Rather, a claim exists only when the

"execution of a government's policy or custom . . . inflicts the injury[.]" *Id.* Thus, a

plaintiff suing a sheriff's office must allege facts showing that a custom or policy led

to the violation. *Geter v. Wille*, 846 F.2d 1352, 1354 (11th Cir. 1988).

"A policy is a 'decision that is officially adopted by the [law enforcement

agency], or created by an official of such a rank that he or she could be said to be

acting on behalf of [the law enforcement agency].'" *Myrick v. Fulton Cnty.*, 69 F.4th

1277, 1299 (11th Cir. 2023) (quoting *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1356

(11th Cir. 2022)). "A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." *Id.* (quoting *Christmas*, 51 F.4th at 1356). "Demonstrating a policy or custom requires showing a persistent and wide-spread practice." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007).

Here, Webb alleges no fact from which to infer that a policy or custom of the Sarasota County Sheriff's Office resulted in Webb's loss of contact and visitation with his child. Nor do the facts suggest that, with an opportunity to amend, Webb could show that the refusal to act by the Sheriff's Office resulted from a persistent and widespread practice. Accordingly, Webb's claim against the Sheriff's Office should be dismissed.

Additionally, Webb's claim against the Florida Department of Children and Families is barred under the Eleventh Amendment, which provides immunity to states from federal lawsuits. *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Com'n*, 226 F.3d 1226, 1231 (11th Cir. 2000). This immunity extends to the Florida Department of Children and Families. *Hood v. Dep't of Child. & Fams.*, No. 2:12-CV-637-FTM-29, 2014 WL 757914, at *3 (M.D. Fla. Feb. 26, 2014) (explaining that DCF is a state agency under Fla. Stat. § 20.19 and is entitled to Eleventh Amendment immunity).

Furthermore, Webb's amended complaint contains no factual allegation to overcome Eleventh Amendment immunity. *Ex Parte Young*, 209 U.S. 123 (1908), recognizes an exception to Eleventh Amendment immunity when a party sues for

prospective injunctive relief in "challenging the constitutionality of a state official's action," because such a lawsuit is deemed a lawsuit against the official and "not . . . against the State." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). However, the *Ex Parte Young* exception applies only to claims against state officials and not to claims against "the States or their agencies, which retain their immunity against all suits in federal court." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). For this exception to apply, a complaint must allege "an ongoing violation of federal law and seek[] relief properly characterized as prospective." *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Because the amended complaint seeks an award of damages, Doc. 6 at 6, cites no "ongoing violation of federal law," and seeks no "prospective" relief, the exception recognized in *Ex Parte Young* is inapplicable.

The two other exceptions to Eleventh Amendment immunity are similarly inapplicable. An exception applies if a state expressly waives its immunity under the Eleventh Amendment. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 99. Although Florida has expressly waived immunity for certain lawsuits raising traditional tort claims under Section 768.28(1), Florida Statutes (2017), Florida has not waived immunity for a civil rights action against a state agency under Section 1983. *Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1515 (11th Cir. 1986) (holding that Florida's waiver of immunity is limited to traditional torts and "does not constitute consent to suit in federal court under § 1983."). For the final exception, "Congress has power with respect to the rights protected by the Fourteenth Amendment to abrogate the

10

Eleventh Amendment immunity . . . ." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 99.

However, Congress has not abrogated Eleventh Amendment immunity for Section

1983 claims. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Thus, none of the

exceptions to Eleventh Amendment immunity apply to Webb's Section 1983 claim

against the Florida Department of Children and Families.

### d. Because this action derives from an ongoing domestic relations dispute over visitation, abstention may be warranted.

"The federal judiciary has traditionally abstained from deciding cases

concerning domestic relations." *Ingram*, 866 F.2d at 369. Because of this, "federal

courts generally dismiss cases involving divorce and alimony, child custody,

visitations rights, establishment of paternity, child support, and enforcement of

separation or divorce decrees still subject to state court modification." *Id.* at 369. The

policies favoring abstention include "'the strong state interest in domestic relations

matters, the competency of state courts in settling family disputes, the possibility of

incompatible federal and state decrees in cases of continuing judicial supervision by

the state, and the problem of congested dockets in federal courts.'" *Id.* at 369-70

(quoting *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978)). As directed in *Ingram*,

abstention and dismissal are warranted "if hearing the claim would mandate inquiry

into the marital or parent-child relationship." *Id.* at 370.

Although Webb seeks no relief directly impacting his visitation with his minor

child, the relief he seeks could result in incompatible or conflicting state and federal

orders. This dispute arises from an ongoing, state domestic relations case, with the

most recent order occurring in that case on March 9, 2026. *See Cervera v. Webb*, No. 2015 DR 001516 NC, DIN 1269 (Fla. 12th Cir. Ct. 2015). To the extent that Webb alleges unlawful interference with the family court's order, that court is in the best position to evaluate the claim of unlawful interference and, if necessary, to modify or enforce the order. *See Glegg v. Van Den Hurk*, 379 So. 3d 1171, 1173 (Fla. 4th DCA 2024) (recognizing that, "[i]n the time that a defendant in a civil suit has to file a motion to dismiss, a family court judge can hold a hearing, take evidence, and fashion a remedy."). Thus, even if dismissal is unwarranted under the doctrine of claim splitting, dismissal appears warranted under the abstention principle articulated in *Ingram*.

### e. Leave to amend should be denied.

A district court typically must provide a *pro se* plaintiff with notice of the intent to dismiss and an opportunity to respond. *See Quire v. Smith*, No. 21-10473, 2021 WL 3238806, at *1 (11th Cir. July 30, 2021); *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011). "An exception to this requirement exists, however, when amending the complaint would be futile, or when the complaint is patently frivolous." *Quire*, 2021 WL 3238806, at *1; *Davis v. Kvalheim*, 261 F. App'x 231, 234 (11th Cir. 2008). Webb amended his complaint once already. Doc. 6; FED. R. CIV. P. 15(a). Based on the claim-splitting doctrine, the absence of a plausible Section 1983 claim under any construction of the facts, and the abstention doctrine articulated in *Ingram*, I find that further amendment would be futile. Thus, I recommend dismissing the amended

complaint without leave to amend.

### III.   CONCLUSION

For the reasons explained in this report, I recommend denying the motion to proceed *in forma pauperis*, Doc. 2; dismissing the amended complaint without leave to amend; terminating any pending motion; and closing the case.

**REPORTED** in Tampa, Florida, on this 13th day of March, 2026.

LINDSAY S. GRIFFIN
United States Magistrate Judge

# TAB 11

## OBJECTIONS TO REPORT AND RECOMMENDATION

District Court Doc. 11

D.C. Case No. 8:25-cv-01990-SDM-LSG

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEREMIAH VERNON WEBB,

Plaintiff,

v.                                                    Case No. 8:25-cv-01990-SDM-LSG

FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES;

DAVID BOOKER; DEKESHA J. BATTIESTE; TONGE JOHNSON;

and JOHN and JANE DOES,

Defendants.

---

# PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

Plaintiff, Jeremiah Vernon Webb, proceeding pro se, timely objects to the Report and Recommendation entered on March 13, 2026, and requests de novo review of the portions objected to.

## I.   Objection 1:

**The Report treats the controversy too broadly and does not account for a narrower federal pleading focused only on the independent conduct of state actors.**

1. The Report broadly characterizes the case as part of an ongoing domestic dispute and uses that broad characterization to support dismissal.

2. Plaintiff objects because the relevant question is not whether related domestic-relations proceedings exist, but whether this federal action can be narrowed to an independent federal claim against individual state actors for their own conduct under color of law.

3. The attached Verified Second Amended Complaint does exactly that. It does not ask this Court to modify custody, enforce a parenting plan, review the merits of a domestic-relations order, or function as an appellate court over state proceedings.

4. Instead, it limits the case to whether individual DCF-related actors independently violated Plaintiff's federal rights through their own directives, communications, retaliatory conduct, investigative acts, and damaging findings.

## II. Objection 2:

**The Report's claim-splitting analysis does not justify dismissal without leave to amend.**

5. The Report concludes that this action is barred by claim splitting because Plaintiff has related state litigation involving overlapping facts.

6. Plaintiff objects to dismissal on that basis without leave to amend because the attached proposed pleading materially narrows the case and removes the overlap-producing features of the earlier complaint.

7. The proposed pleading:

    a. removes DCF as a federal damages defendant,

    b. removes the prior state-law count,

    c. removes the Sheriff's Office / Monell theory,

    d. and pleads only individual-capacity federal claims.

8. The existence of overlapping facts does not mean that no distinct federal claim can be pleaded. The proposed pleading shows that a narrower federal slice can be stated.

## III. Objection 3:

**The Report correctly identified weaknesses in the prior amended complaint, but incorrectly concluded that amendment would be futile.**

9. This is Plaintiff's principal objection.

10. The prior amended complaint was less precise than it should have been. But the Report then went too far by concluding that no further amendment could cure the problem.

11. The attached proposed pleading cures the defects identified in the Report by:

    a. dropping the agency-based federal damages theory;

    b. dropping the state-law and Monell components;

    c. pleading a fuller chronology of the individual defendants' conduct;

d. sharpening the federal constitutional theories; and

e. clearly separating the federal civil-rights claims from any request for domestic-relations relief.

12. The proposed pleading specifically alleges:

a. a direct complaint by Plaintiff to Battieste about Booker while Booker was present and knew he was being reported;

b. a retaliatory reversal by Booker after that complaint;

c. multiple complaints by Plaintiff concerning Battieste to DCF leadership and Inspector General channels;

d. Battieste's alleged use of a supposed new investigation before it had been formally filed;

e. Battieste's late-March statement reflecting hostility to Plaintiff's complaints and escalation efforts;

f. and the later use or maintenance of the Favorin finding in the adverse sequence against Plaintiff.

13. Those allegations show that amendment is not futile.

## IV. Objection 4:

**The Report's abstention analysis is too broad as applied to the proposed narrowed pleading.**

14. Plaintiff agrees that a federal court should not function as a family court or enter competing custody or timesharing decrees.

15. But the attached proposed pleading does not seek that.

16. It seeks adjudication only of whether identified state actors, after being shown the operative court-ordered framework, used state authority to interfere with Plaintiff's federally protected relationship with his child and later compounded that injury through retaliatory investigations, findings, and adverse participation in later proceedings.

17. Adjudicating those independent constitutional claims does not require this Court to decide who should have custody, how a parenting plan should be enforced, or whether a state judge should have ruled differently in domestic-relations proceedings.

## V. Objection 5:

### The Report overstates the nature of the pending 2DCA appeal.

18. The Report states that Plaintiff's family case remains pending on appeal. Plaintiff objects to the extent that statement is used to imply that the entire parent-child controversy is presently before the state appellate court.

19. The 2DCA appeal identified by Plaintiff is narrower. It is an appeal from orders denying a petition for writ of habeas corpus and denying reconsideration of that habeas ruling. It is not a plenary appeal presenting every independent federal constitutional claim against DCF actors.

20. Plaintiff does not argue that this distinction alone resolves all jurisdictional issues. Rather, it underscores why amendment is not

futile: the federal complaint can be narrowed so that this Court adjudicates only the distinct federal claim that belongs here.

## VI. Objection 6:

**The revised retaliation allegations show that one part of this controversy belongs in federal court.**

21. The Report did not have before it the refined federal pleading now attached.

22. That pleading alleges a concrete retaliation sequence:

   a. Plaintiff complained directly to Battieste about Booker while Booker was present and knew he was being reported;

   b. after that complaint, Booker allegedly contradicted the corrective position Battieste had conveyed and told officers to keep the child from Plaintiff while also making additional negative statements about Plaintiff;

   c. Plaintiff later made multiple complaints concerning Battieste to DCF leadership and Inspector General channels;

   d. Battieste allegedly used or referenced a supposed new investigation through law enforcement before that investigation had formally been filed;

   e. Battieste later made a statement in substance that "Even if you are innocent, how you are going about it is a problem, and I do not like it," which supports a retaliatory inference;

f.  and after the September 19, 2025 hearing did not achieve the intended adverse result, Defendants allegedly used, maintained, or allowed the Favorin-related finding to deepen the adverse posture against Plaintiff in the continued proceedings.

23.  These are independent federal retaliation and due-process allegations directed at state actors' own conduct. They are not requests for domestic-relations review.

## VII.  Objection 7:

**If the Court finds the prior amended complaint deficient, the proper course is to permit the narrower attached pleading.**

24.  Plaintiff has not responded to the Report merely with generalized disagreement. He has submitted a complete proposed pleading that narrows the case and attempts to conform it to the federal limits identified by the Court.

25.  That is the correct procedural response. The Court should permit the proposed amended complaint rather than dismiss the action with prejudice at the screening stage.

## VIII.  CONCLUSION

26.  For these reasons, Plaintiff respectfully requests that the Court:

A. sustain these objections;

B. decline to adopt the Report and Recommendation to the extent it recommends dismissal without leave to amend;

C. grant Plaintiff leave to file the attached Proposed Verified Second Amended Complaint;

D. allow the case to proceed on the narrowed federal pleading; and

E. grant such other and further relief as is just.

Respectfully submitted,

JEREMIAH VERNON WEBB
Plaintiff, pro se
11121 Lost Creek Terr 101
Bradenton, FL 34211
801-755-9600
jeremiah@shoponfire.com

# TAB 12

## MOTION FOR LEAVE TO AMEND COMPLAINT

District Court Doc. 12

D.C. Case No. 8:25-cv-01990-SDM-LSG

MAR 17 2026 PM12:32
FILED - USDC - FLMD - TPA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JEREMIAH VERNON WEBB,

Plaintiff,

v.

Case No. 8:25-cv-01990-SDM-LSG

FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES;

DAVID BOOKER; DEKESHA J. BATTIESTE; TONGE JOHNSON;

and JOHN and JANE DOES,

Defendants.

---

## PLAINTIFF'S MOTION FOR LEAVE TO FILE PROPOSED VERIFIED SECOND AMENDED COMPLAINT

Plaintiff, Jeremiah Vernon Webb, proceeding pro se, moves for leave to file the attached Verified Second Amended Complaint, and states:

1. On March 13, 2026, the Magistrate Judge entered a Report and Recommendation recommending denial of Plaintiff's motion to proceed in forma pauperis and dismissal of the Amended Complaint without leave to amend.

2. Plaintiff contemporaneously files timely objections to the Report and Recommendation.

3. Plaintiff respectfully seeks leave under Federal Rule of Civil Procedure 15(a)(2) to file the attached Verified Second Amended Complaint.

4. The proposed amendment is not brought in bad faith, for delay, or for any improper purpose.

5. The proposed amendment materially narrows, clarifies, and restructures the action.

6. Specifically, the proposed amendment cures the principal concerns identified in the Report and Recommendation by:

   a. removing Florida Department of Children and Families as a federal damages defendant;

   b. removing the prior state-law count and narrowing the action to federal claims under 42 U.S.C. § 1983;

   c. removing the prior Sheriff's Office / Monell theory;

   d. clarifying that Plaintiff does not seek modification of custody, enforcement of a parenting plan, review of the merits of a domestic-relations order, or appellate-style review of state-court judgments;

   e. pleading a materially fuller chronology of the conduct of the individual defendants; and

   f. limiting the case to the distinct federal component of the controversy - namely, whether identified state actors, acting under color of law, independently violated Plaintiff's federal

rights.

7. The proposed amendment is therefore not a repackaging of the earlier pleading. It is a narrower and more disciplined complaint designed to separate what belongs in federal court from what does not.

8. The proposed pleading alleges with greater specificity that:

   a. after being shown operative court-ordered timesharing materials, Booker allegedly directed that the child be withheld from Plaintiff;

   b. Plaintiff complained directly to Battieste about Booker's conduct while Booker was present and knew he was being reported to his supervisor;

   c. after that protected complaint, Booker allegedly did the opposite of the corrective position Battieste had conveyed and told law enforcement to keep the child from Plaintiff, while also making additional negative statements about Plaintiff to officers;

   d. between approximately February 21 and March 8, 2025, Plaintiff made multiple complaints concerning Battieste to DCF Inspector General, leadership, and triage channels;

   e. on February 28, 2025, Battieste was allegedly already using or referencing a supposed new DCF investigation through law enforcement before that investigation had formally been filed;

f. in late March 2025, Battieste allegedly told Plaintiff, in substance, "Even if you are innocent, how you are going about it is a problem, and I do not like it," which supports Plaintiff's retaliation theory; and

g. after the September 19, 2025 hearing did not produce the desired result against Plaintiff, DCF actors allegedly used, maintained, or allowed the Favorin investigation and verified finding to deepen the adverse posture against Plaintiff going into the October 20, 2025 continued hearing.

9. These additional allegations are directed to the independent conduct of the individual defendants and are not requests for this Court to decide custody or visitation issues.

10. The proposed amendment is not futile because it removes or narrows the features of the prior pleading that most directly drove the Report's futility conclusion.

11. At minimum, the proposed pleading presents a substantially different complaint from the prior amended complaint because it is:

a. more specific,

b. more fact-driven,

c. limited to individual-capacity federal claims,

d. and more clearly confined to the federal slice of the controversy.

12. Plaintiff is pro se and seeks to conform the operative pleading to the federal limits identified by the Court, not to expand the case beyond those limits.

13. The Verified Second Amended Complaint is attached as Exhibit 1.

**WHEREFORE**

Plaintiff respectfully requests that the Court:

A. grant leave to file the attached Verified Second Amended Complaint as the operative pleading;

B. reject the recommendation that amendment would be futile;

C. permit this action to proceed on the narrowed federal pleading; and

D. grant such other and further relief as is jus

Respectfully submitted,

**JEREMIAH VERNON WEBB**
Plaintiff, pro se
11121 Lost Creek Terr 101
Bradenton, FL 34211
801-755-9600
jeremiah@shoponfire.com

**CERTIFICATE OF SERVICE**

I certify that on ___March 17th___, 2026, I filed the foregoing with the Clerk of Court.

**JEREMIAH VERNON WEBB**
Plaintiff, pro se
11121 Lost Creek Terr 101
Bradenton, FL 34211
801-755-9600
jeremiah@shoponfire.com

# TAB 12-1

## PROPOSED VERIFIED SECOND AMENDED COMPLAINT

District Court Doc. 12-1; PageID 103-124

D.C. Case No. 8:25-cv-01990-SDM-LSG

MAR 17 2026 PM 12:33
FILED - USDC - FLMD - TPA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEREMIAH VERNON WEBB,

Plaintiff,

v.                                                   Case No. 8:25-cv-01990-SDM-LSG

DAVID BOOKER, in his individual capacity;

DEKESHA J. BATTIESTE, in her individual capacity;

TONGE JOHNSON, in her individual capacity;

RACHAEL A. FAVORIN, in her individual capacity; and

JOHN AND JANE DOE(S), in their individual capacities,

Defendants.

---

## VERIFIED SECOND AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER 42 U.S.C. § 1983

Plaintiff, Jeremiah Vernon Webb, proceeding pro se, alleges:

### I. NATURE OF ACTION

1. This is a civil-rights action under 42 U.S.C. § 1983 for damages and related relief arising from independent acts of state officials and employees who, acting under color of state law, allegedly interfered with Plaintiff's federally protected parent-child relationship, deprived Plaintiff of due process, and retaliated against Plaintiff for engaging in protected activity.

2. Plaintiff does not ask this Court to modify custody, alter timesharing, review the merits of a state domestic-relations order, or sit as an appellate court over any state-court judgment.

3. Plaintiff challenges only the independent conduct of the Defendants themselves: their alleged directives, communications, omissions, misuse of state authority, retaliatory investigative acts, damaging findings, and related deprivations.

## II. JURISDICTION AND VENUE

4. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

5. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

6. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Sarasota County, Florida.

## III. PARTIES

7. Plaintiff Jeremiah Vernon Webb is an adult resident of Florida and the father of the minor child, B.A.W.

8. At all relevant times, Defendant David Booker was employed by or acting for the Florida Department of Children and Families ("DCF") as a child protective investigator or similar investigator in Sarasota County. Plaintiff sues Booker in his individual capacity.

9. At all relevant times, Defendant Dekesha J. Battieste was employed by or acting for DCF as a supervisor or similar official in Sarasota County. Plaintiff sues Battieste in her individual capacity.

10. At all relevant times, Defendant Tonge Johnson was employed by or acting for DCF as a supervisor, manager, or similar official involved in communications relevant to the events alleged here. Plaintiff sues Johnson in her individual capacity.

11. At all relevant times, Defendant Rachael A. Favorin was employed by or acting for DCF as an investigator or protective investigator. Plaintiff sues Favorin in her individual capacity.

12. Defendants John and Jane Doe(s) are presently unidentified persons who, on information and belief, were DCF employees, agents, contractors, supervisors, or other persons acting under color of state law and directly participated in the conduct alleged herein. Plaintiff will seek leave to substitute their names when identified.

## IV. FEDERAL-COURT LIMITATION

13. Plaintiff acknowledges that state domestic-relations proceedings existed and continue to exist.

14. Plaintiff does not seek a federal ruling on who should have custody, what the parenting plan should say, or whether a Florida family judge should have entered a different domestic-relations order.

15. The claims in this action are limited to whether Defendants, acting under color of state law, independently violated Plaintiff's federal constitutional rights through their own conduct.

## V. FACTUAL ALLEGATIONS

16. At all material times relevant to the February 2025 withholding events described below, Plaintiff had court-ordered timesharing rights with his minor child under a valid Florida court order.

17. Plaintiff had the operative parenting materials and could show them to officials involved in the events at issue.

18. Before the events described below, Plaintiff had been pressing enforcement of the governing family-court framework, objecting to interference with his parent-child relationship, seeking law-enforcement assistance, making complaints to oversight bodies, and communicating concerns to public officials.

19. On or about February 17, 2025, Plaintiff submitted a complaint to oversight authorities concerning school-related interference with the governing parent-child framework.

20. Plaintiff was informed that the matter was forwarded to DCF or a DCF-related office for handling.

21. On February 18, 2025, Defendant Booker sent Plaintiff a text message stating, in substance, that "the school isn't cooperating."

22. On February 18, 2025, during Plaintiff's court-ordered pickup and timesharing period, Plaintiff went to retrieve his child.

23. Around that time, Defendant Booker approached Plaintiff and told Plaintiff, in substance, that Booker had told the child's mother to take the child.

24.   Before Booker made that statement and before Booker allegedly gave that direction, Plaintiff showed Booker the operative parenting plan and related court-ratified materials establishing Plaintiff's timesharing rights.

25.   Booker therefore had actual notice that Plaintiff was asserting existing court-ordered parent-child rights.

26.   Despite that notice, Booker allegedly directed, caused, encouraged, or confirmed that the child should be kept from Plaintiff during Plaintiff's court-ordered timesharing period.

27.   After that encounter, Booker directed Plaintiff to go to the DCF/CPI office in Sarasota.

28.   Plaintiff went directly to that office.

29.   At approximately 4:30 p.m. on February 18, 2025, Booker and Battieste met with Plaintiff there.

30.   During that meeting, Plaintiff provided Battieste with the parenting materials and related documents reflecting Plaintiff's timesharing rights.

31.   During that meeting, Plaintiff complained directly to Battieste about Booker's conduct, including Booker's direction that the child be kept from Plaintiff despite the governing court-ordered framework.

32.   Booker was present with Battieste during Plaintiff's complaint and knew that Plaintiff was reporting Booker's conduct to his supervisor.

33. During that same meeting, Battieste determined, or stated in substance, that Plaintiff should have the child and that Plaintiff could retrieve the child and call law enforcement if necessary.

34. While Plaintiff was at the DCF office, Plaintiff received a message from the child's mother stating, in substance, that DCF said to keep the child.

35. Plaintiff showed that message to Battieste.

36. Battieste then again stated, in substance, that Plaintiff could retrieve the child and that DCF would tell law enforcement the same thing.

37. Plaintiff specifically asked whether DCF would stand behind that position, and Battieste confirmed in substance that DCF would do so and that it was Plaintiff's timesharing.

38. At approximately 6:15 p.m. on February 18, 2025, Plaintiff contacted law enforcement and went to the mother's residence to retrieve the child.

39. At the residence, the mother again stated, in substance, that DCF said to keep the child from Plaintiff.

40. Plaintiff provided responding officers with the DCF business card Battieste had given him.

41. After further communications at the residence, officers told Plaintiff, in substance, that DCF said to keep the child from him.

42. An officer's report from that night states in substance that the mother said school personnel had advised her that, per DCF, she was to keep the child until a DCF supervisor identified as "Tonge" contacted her.

43. That same report states in substance that Booker said his supervisor had been contacted.

44. On information and belief, Johnson was the DCF supervisor referenced in those communications.

45. Plaintiff later obtained body-worn-camera footage from that evening and personally heard Booker state, in substance, that the child should be kept from Plaintiff.

46. Plaintiff further personally heard Booker make additional negative statements about Plaintiff to officers, including statements undermining Plaintiff's attempt to obtain release of the child.

47. Plaintiff alleges that Booker's contrary instructions and negative statements to law enforcement occurred after Plaintiff had complained about Booker directly to Battieste and while Booker knew Plaintiff had reported him to his supervisor.

48. Plaintiff alleges that Booker's reversal from the corrective position Battieste had conveyed to Plaintiff - namely, that Plaintiff should retrieve the child and that DCF would confirm that to law enforcement - was intentional and retaliatory.

49. The child was not released to Plaintiff on February 18, 2025 during Plaintiff's court-ordered timesharing period.

50. On February 19, 2025, the same pattern repeated and the child was again withheld from Plaintiff during Plaintiff's court-ordered timesharing period.

51. After February 19, 2025, Booker stopped communicating with Plaintiff despite Plaintiff's efforts to reach him.

52. Between approximately February 21, 2025 and March 8, 2025, Plaintiff made multiple complaints and reports concerning Battieste's conduct to DCF's Inspector General, leadership personnel, and/or triage personnel.

53. Those complaints included allegations that Battieste had participated in, approved, failed to correct, or allowed DCF authority to be used to block Plaintiff's court-ordered exchanges.

54. Plaintiff alleges that Battieste knew, or reasonably understood, that Plaintiff had escalated complaints about her conduct to higher levels within DCF.

55. On February 27, 2025, Battieste called Plaintiff and asked whether Plaintiff intended to attempt pickup on February 28.

56. Plaintiff said that he did and also told Battieste that DCF had told law enforcement to keep the child from him.

57. During that communication, Battieste stated in substance that law enforcement had not called Booker.

58. During that same communication, Battieste contacted the mother and then called Plaintiff back.

59. Battieste then stated in substance that Booker should not have done that, that it was wrong, and that DCF would direct all parties to follow the parenting plan.

60. By that point, Battieste had actual notice that DCF instructions had been used to block Plaintiff's court-ordered exchanges.

61. On February 28, 2025, Plaintiff again went to pick up the child during Plaintiff's court-ordered timesharing period.

62. The child was again withheld from Plaintiff.

63. Later on February 28, Plaintiff went to the mother's residence to retrieve the child, and Officer Cespedes responded.

64. Officer Cespedes told Plaintiff, in substance, that he had spoken with Battieste and that Battieste said to withhold the child because there was a new investigation against Plaintiff.

65. To Plaintiff's knowledge, no such new investigation had yet been formally filed at that time.

66. Plaintiff alleges that the February 28 communication reflected coordination between Battieste and Cespedes about a supposed new DCF investigation before that investigation had formally been opened.

67. On March 1, 2025, Plaintiff went to the Sarasota Police Department.

68. A sergeant determined in substance that Plaintiff's parenting plan was valid and went to the mother's residence.

69. Plaintiff was informed that law enforcement told the mother that a criminal charge would be filed if she did not release the child, but the child still was not released to Plaintiff.

70. On the morning of March 17, 2025, a probable-cause affidavit was filed relating to the withholding of the child.

71. Later that same evening, a new DCF investigation was opened against Plaintiff.

72. Plaintiff alleges that Battieste oversaw that March 17, 2025 investigation.

73. The new DCF investigation was thus formally opened approximately sixteen days after the February 28 communication in which Battieste was already using or referencing a supposed new investigation as a basis to continue withholding the child from Plaintiff.

74. Plaintiff alleges that the February 28 communication and the later March 17 opening of the investigation, viewed together, support the inference that adverse investigative action against Plaintiff was being discussed, anticipated, coordinated, or used against Plaintiff before any formal filing existed.

75. In late March 2025, after the March 17 investigation had been opened, Plaintiff spoke with Battieste by telephone.

76. During that call, Plaintiff told Battieste that the March 17 investigation was unfounded and should not have been opened.

77. In response, Battieste told Plaintiff in substance: "Even if you are innocent, how you are going about it is a problem, and I do not like it."

78. Plaintiff understood Battieste's statement to refer to Plaintiff's continued complaints to DCF leadership, the Inspector General, oversight authorities, law enforcement, and courts concerning the conduct of DCF personnel.

79. Plaintiff alleges that Battieste's statement demonstrates hostility toward Plaintiff's continued complaints and escalation of those complaints through official channels.

80. Plaintiff alleges that Battieste's statement, viewed together with the timing and sequence of events described above, supports the inference that adverse actions taken against Plaintiff were motivated, at least in part, by Plaintiff's protected activity.

81. That March 17, 2025 investigation later closed on or about May 16, 2025.

82. The Safety Analysis Summary for that investigation stated in substance that there were no negative family conditions crossing the threshold to conclude that the child was unsafe in Plaintiff's care.

83. Despite that conclusion, Plaintiff alleges that Defendants did not take effective corrective action to undo the earlier custody-blocking communications or the harm caused by the investigation.

84. Plaintiff also alleges that related school-connected DCF handling, including matters handled or allowed to close without interviewing key

witnesses identified by Plaintiff, remained uncorrected despite Plaintiff's objections and escalation requests.

85. Plaintiff alleges the following sequence: after Plaintiff pressed enforcement of the parenting plan and sought oversight intervention, DCF action followed; after Plaintiff sought police and prosecutorial enforcement, DCF action followed; and after law enforcement moved toward criminal enforcement, a new DCF investigation was opened the same day.

86. On July 30, 2025, another DCF investigation was opened, and Favorin was the protective investigator of record.

87. That investigation resulted in a verified "mental injury" finding against Plaintiff.

88. Favorin did not interview Plaintiff face-to-face before issuing or maintaining that verified finding.

89. DCF's own notes for that investigation reflect that on September 26, 2025, Plaintiff was listed as "Attempted; Not at Home," and no completed face-to-face interview of Plaintiff occurred before closure.

90. On September 19, 2025, DCF personnel, including Booker and Battieste, appeared and provided adverse testimony and/or information against Plaintiff in family court.

91. Plaintiff alleges that this occurred after Plaintiff continued seeking enforcement of the governing framework, objecting to one-sided materials, and attempting to restore his relationship with his child.

92. Plaintiff further alleges that when the September 19, 2025 family-court hearing and DCF participation did not achieve the desired result against him, DCF personnel then used, employed, maintained, or allowed the Favorin investigation and verified finding to deepen the adverse record and continue harming Plaintiff in connection with the proceedings leading into the continued hearing on October 20, 2025.

93. Plaintiff alleges that the verified "mental injury" finding and related DCF conduct were available for use in ongoing proceedings affecting Plaintiff's protected parent-child relationship.

94. At no time relevant to the February 18, 19, and 28, 2025 withholding events was Plaintiff shown any court order suspending his timesharing rights.

95. Plaintiff alleges that the conduct of Booker, Battieste, Johnson, and Favorin was not a good-faith child-protection response authorized by lawful process, but a misuse of state authority that deprived Plaintiff of federally protected rights.

96. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of parenting time, injury to his parent-child relationship, emotional distress, reputational harm, and related damages.

## VI. COUNT I – 42 U.S.C. § 1983

### PROCEDURAL DUE PROCESS

(Against Booker, Battieste, Johnson, and Doe Defendants in their individual capacities)

97. Plaintiff realleges paragraphs 1 through 96.

98. Plaintiff had a protected liberty interest in the care, custody, companionship, and association of his child.

99. Defendants acted under color of state law.

100. After being shown the operative parenting materials and having actual notice of Plaintiff's court-ordered timesharing rights, Booker allegedly directed or caused the child to be withheld from Plaintiff without lawful process.

101. Battieste had actual notice that DCF directions were being used to block Plaintiff's court-ordered exchanges, confirmed Plaintiff's rights, later acknowledged Booker's conduct was wrong, and yet allegedly failed to ensure effective correction and later participated in or communicated additional withholding directions.

102. On information and belief, Johnson participated in, approved, confirmed, or failed to correct the DCF communications used to withhold the child from Plaintiff despite knowledge of Plaintiff's court-ordered timesharing rights.

103. Defendants deprived Plaintiff of his protected liberty interest without adequate notice, hearing, judicial authorization, or other constitutionally sufficient process.

104. Defendants' conduct caused Plaintiff actual injury and damages.

WHEREFORE, Plaintiff demands judgment against Booker, Battieste, Johnson, and the Doe Defendants for compensatory damages, punitive damages as allowed by law, costs, and such further relief as the Court deems proper.

## VII.  COUNT II – 42 U.S.C. § 1983

## SUBSTANTIVE DUE PROCESS / FAMILIAL ASSOCIATION

(Against Booker, Battieste, Johnson, and Doe Defendants in their individual capacities)

105.  Plaintiff realleges paragraphs 1 through 96.

106.  The Due Process Clause protects against arbitrary executive interference with the parent-child relationship.

107.  Defendants, acting under color of state law and after being shown the governing court-ordered framework, allegedly used state authority to block Plaintiff's court-ordered parent-child relationship in an arbitrary manner that lacked lawful justification.

108.  The conduct alleged was conscience-shocking, arbitrary, and not reasonably related to a lawful child-protection process.

109.  As a direct and proximate result, Plaintiff suffered injury to his parent-child relationship and other damages.

WHEREFORE, Plaintiff demands judgment against Booker, Battieste, Johnson, and the Doe Defendants for compensatory damages, punitive

damages as allowed by law, costs, and such further relief as the Court deems proper.

## VIII. COUNT III – 42 U.S.C. § 1983

## FIRST AMENDMENT RETALIATION

(Against Booker, Battieste, Favorin, Johnson, and Doe Defendants in their individual capacities)

110. Plaintiff realleges paragraphs 1 through 96.

111. Plaintiff engaged in protected activity, including making complaints to oversight authorities, seeking law-enforcement and prosecutorial relief, objecting in court, complaining directly to Battieste about Booker's conduct on February 18, 2025, and making multiple reports concerning Battieste to DCF leadership, the Inspector General, and triage personnel between February 21 and March 8, 2025.

112. Booker knew that Plaintiff had complained about him because Booker was present with Battieste when Plaintiff reported Booker's conduct and challenged Booker's direction that the child be kept from Plaintiff.

113. Battieste knew of Plaintiff's protected activity through Plaintiff's direct complaints, his repeated escalation of concerns about her conduct to DCF leadership and Inspector General channels, his law-enforcement efforts, and his court objections.

114. Johnson and the Doe Defendants knew of Plaintiff's protected activity through Plaintiff's repeated efforts to enforce his rights and the related supervisory and operational communications described above.

115. After Plaintiff engaged in that protected activity, DCF actions allegedly followed in a pattern that included custody-blocking communications, supervisory involvement in continued withholding, new investigations, maintenance of damaging findings, and adverse participation in later proceedings.

116. As to Booker specifically, Plaintiff alleges that after Plaintiff complained about Booker to Battieste in Booker's presence, Booker intentionally did the opposite of the corrective position Battieste had conveyed, told law enforcement to keep the child from Plaintiff, and made additional negative statements about Plaintiff to officers.

117. Plaintiff alleges that Booker's actions described above were motivated, at least in part, by Plaintiff's complaint about Booker and by Booker's knowledge that Plaintiff had reported him to Battieste.

118. As to Battieste specifically, Plaintiff alleges that after Plaintiff escalated complaints about her to DCF leadership and Inspector General channels, Battieste participated in or approved adverse actions against Plaintiff, including communications used to continue withholding the child from Plaintiff and communications with law enforcement on February 28, 2025 about a supposed new DCF investigation before that investigation had formally been filed.

119. Plaintiff alleges that the later formal opening of the new DCF investigation on March 17, 2025—approximately sixteen days after the February 28 communication—supports the inference that adverse investigative action was being coordinated, anticipated, or used against Plaintiff in retaliation for his complaints and escalation efforts.

120. Plaintiff further alleges that Battieste's late-March statement—"Even if you are innocent, how you are going about it is a problem, and I do not like it"—reflects hostility toward Plaintiff's protected complaints and escalation through official channels.

121. Plaintiff further alleges that Battieste later provided adverse testimony and/or information against him in family court after Plaintiff continued complaining, escalating, and seeking enforcement of his rights.

122. As to Favorin specifically, Plaintiff alleges that Favorin's issuance or maintenance of a verified "mental injury" finding without first interviewing Plaintiff, together with the chronology alleged above and the use or availability of that finding in later proceedings, was part of the retaliatory sequence Plaintiff experienced after continuing to complain, escalate, and seek enforcement.

123. Plaintiff alleges that after the September 19, 2025 hearing did not achieve the desired adverse result against him, Defendants used, maintained, or allowed the Favorin-related finding and investigation to deepen the adverse posture against Plaintiff for the continued October 20, 2025 proceedings.

124. Defendants' retaliatory acts would likely deter a person of ordinary firmness from continuing such protected activity.

125. Defendants' retaliatory acts caused Plaintiff actual injury and damages.

WHEREFORE, Plaintiff demands judgment against Booker, Battieste, Favorin, Johnson, and the Doe Defendants for compensatory damages, punitive damages as allowed by law, costs, and such further relief as the Court deems proper.

## IX. COUNT IV – 42 U.S.C. § 1983

## PROCEDURAL DUE PROCESS AS TO VERIFIED FINDING

(Against Favorin and Doe Defendants in their individual capacities)

126. Plaintiff realleges paragraphs 1 through 96.

127. Favorin, acting under color of state law, issued, maintained, or allowed to remain a verified "mental injury" finding against Plaintiff.

128. Before issuing, maintaining, or allowing that verified finding to remain in place, Favorin did not conduct a face-to-face interview of Plaintiff.

129. Plaintiff alleges that the verified finding was stigmatizing, harmful, and available for use in proceedings and processes affecting Plaintiff's relationship with his child.

130. Plaintiff alleges that the finding was then used, maintained, or allowed to remain available as part of the adverse sequence against him in later proceedings.

131. Plaintiff was thereby deprived of constitutionally sufficient process before or during the maintenance of a damaging state finding affecting protected interests.

132. As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff demands judgment against Favorin and the Doe Defendants for compensatory damages, punitive damages as allowed by law, costs, and such further relief as the Court deems proper.

## X. DAMAGES

133. As a result of Defendants' actions, Plaintiff suffered damages including but not limited to:

    a. loss of court-ordered parenting time;

    b. injury to the parent-child relationship;

    c. emotional distress;

    d. reputational harm;

    e. litigation-related burdens; and

    f. other damages according to proof.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

A. Enter judgment in Plaintiff's favor on the federal counts pleaded herein;

B. Award compensatory damages according to proof;

C. Award punitive damages against the individual Defendants as allowed by law;

D. Award taxable costs;

E. Grant such other and further relief as the Court deems just and proper.

## XII. JURY DEMAND

134. Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

JEREMIAH VERNON WEBB
Plaintiff, pro se
11121 Lost Creek Terr 101
Bradenton, FL 34211
801-755-9600
jeremiah@shoponfire.com

## VERIFICATION

I, Jeremiah Vernon Webb, declare under penalty of perjury under **28 U.S.C. § 1746** that I am the Plaintiff in this action, that I have read the foregoing Proposed Verified Second Amended Complaint, and that the factual allegations contained in it are true and correct to the best of my personal knowledge, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Executed on ___March 17th___, 2026.

**JEREMIAH VERNON WEBB**
Plaintiff, pro se
11121 Lost Creek Terr 101
Bradenton, FL 34211
801-755-9600
jeremiah@shoponfire.com

# TAB 14

## ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING LEAVE TO AMEND AS MOOT

District Court Doc. 14; PageID 127-128

D.C. Case No. 8:25-cv-01990-SDM-LSG

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEREMIAH VERNON WEBB,

     Plaintiff,

v.                                                                    CASE NO. 8:25-cv-01990-SDM-LSG

FLORIDA DEPARTMENT OF
CHILDREN AND FAMILITES,
et al.,

     Defendants.
_____/

## **ORDER**

Appearing *pro se*, Jeremiah Webb asserts (1) a claim under 42 U.S.C. § 1983 for violation of the Fourth and Fourteenth Amendments to the United States Constitution and (2) a claim under Florida law for intentional interference with custodial rights. Webb moves (Doc. 2) to proceed *in forma pauperis*. In a thorough and well-reasoned report (Doc. 10) Magistrate Judge Lindsay S. Griffin recommends denying the motion and dismissing the amended complaint without leave to amend. Webb objects (Doc. 11) to the report and recommendation and moves (Doc. 12) for leave to amend the complaint.

A *de novo* review of the report reveals no error. Webb's objections (Doc. 11) are **OVERRULED**. The magistrate's recommendation is **ADOPTED**. For the reasons stated in the report, the motion (Doc. 2) to proceed *in forma pauperis* is **DENIED**

and the amended complaint (Doc. 6) is **DISMISSED** without leave to amend.  The

motion (Doc. 12) for leave to amend the complaint is **DENIED AS MOOT**.  The

clerk must terminate any pending motion and close the case.

ORDERED in Tampa, Florida, on April 15, 2026.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

# TAB 16

## NOTICE OF APPEAL

District Court Doc. 16

D.C. Case No. 8:25-cv-01990-SDM-LSG

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEREMIAH VERNON WEBB,

Plaintiff,

v.                                                      Case No. 8:25-cv-01990-SDM-LSG

FLORIDA DEPARTMENT OF

CHILDREN AND FAMILIES, et al.,

Defendants.

---

### PLAINTIFF'S NOTICE OF APPEAL

Notice is hereby given that Plaintiff, Jeremiah Vernon Webb, appeals to the
United States Court of Appeals for the Eleventh Circuit from the final Order
entered on April 15, 2026, adopting the Report and Recommendation,
denying Plaintiff's motion to proceed in forma pauperis, dismissing the
amended complaint without leave to amend, denying Plaintiff's motion for
leave to amend as moot, and closing the case.

Plaintiff also appeals all prior interlocutory orders and rulings that merged
into the final judgment.

Date: _____4/21/26_____


I.F.P

JEREMIAH VERNON WEBB
Appellant, pro se
11121 Lost Creek Terr 101
Bradenton, FL 34211
801-755-9600
jeremiah@shoponfire.com

## CERTIFICATE OF SERVICE

I certify that on April __, 2026, I filed this Notice of Appeal with the Clerk of Court. No defendant or counsel of record has appeared in this action for service by me.

JEREMIAH VERNON WEBB
Appellant, pro se
11121 Lost Creek Terr 101
Bradenton, FL 34211
801-755-9600
jeremiah@shoponfire.com

# TAB 19

## TRANSCRIPT INFORMATION FORM / NO-TRANSCRIPT CERTIFICATE

District Court Doc. 19; PageID 148-150

D.C. Case No. 8:25-cv-01990-SDM-LSG

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEREMIAH VERNON WEBB,

Plaintiff,

v.

FLORIDA DEPARTMENT OF CHILDREN
AND FAMILIES; DAVID BOOKER;
DEKESHA J. BATTIESTE; TONGE JOHNSON;
JOHN DOES 1-99; and JANE DOES 1-99,

Defendants-Appellees.

Case No. 8:25-cv-01990-SDM-LSG

USCA11 Case No. 26-11374-B

MAY 11 2026 AM 9:04
FILED - USDC - FLMD - TPA

---

## APPELLANT'S CERTIFICATE THAT NO TRANSCRIPT WILL BE

## ORDERED

Plaintiff-Appellant, Jeremiah Vernon Webb, proceeding pro se, files this Certificate

pursuant to Federal Rule of Appellate Procedure 10(b), Eleventh Circuit Rule 10-1,

and the Eleventh Circuit's Civil Docketing Notice in USCA11 Case No.

26-11374-B. Appellant certifies that no transcript will be ordered for this appeal.

This appeal arises from the district court's April 15, 2026 written order adopting the Report and Recommendation, denying Appellant's motion to proceed in forma pauperis, dismissing the amended complaint without leave to amend, denying Appellant's motion for leave to amend as moot, and closing the case.

Appellant does not presently know of any hearing or oral proceeding for which a transcript is necessary to decide the issues on appeal. The issues on appeal are expected to be resolved from the written record, including the pleadings, the Report and Recommendation, Appellant's objections, Appellant's motion for leave to amend, the proposed verified Second Amended Complaint, Appellant's sworn affidavit of financial inability, the district court's April 15, 2026 order, the Notice of Appeal, and related docket entries.

Accordingly, Appellant certifies that no transcript will be ordered.

Dated _____, 2026         Respectfully submitted,

By: JEREMIAH VERNON WEBB
Plaintiff/Appellant/MBA, pro se
11121 Lost Creek Terr 101
Bradenton, FL 34211-
801-755-9600
jeremiah@shoponfire.com

## CERTIFICATE OF SERVICE

I certify that on _____, 2026, I filed the foregoing with the Clerk of

Court using the Court's CM/ECF system or other authorized filing method. To

the best of my knowledge, no defendant or counsel of record has appeared in

the district court action or in the appeal for service by Appellant. Appellant will

promptly serve any appearing counsel or party as directed by the Court or

required by the applicable rules.

By: JEREMIAH VERNON WEBB
Plaintiff/Appellant/MBA, pro se

# TAB 20

**ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

District Court Doc. 20; PageID 151-152

D.C. Case No. 8:25-cv-01990-SDM-LSG

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEREMIAH VERNON WEBB,

     Plaintiff,

v.                                   CASE NO. 8:25-cv-01990-SDM-LSG

FLORIDA DEPARTMENT OF
CHILDREN AND FAMILIES, et al.,

     Defendants.
_____/

### **ORDER**

Appearing *pro se*, Jeremiah Vernon Webb moves (Doc. 17) to appeal *in forma pauperis*. Under Rule 24, Federal Rules of Appellate Procedure, a party who appeals *in forma pauperis* must submit an affidavit that "shows in detail . . . the party's inability to pay or to give security for fees and costs" and that states "the issues that the party intends to present on appeal." The motion (Doc. 17) states the issues that Webb intends to present on appeal. In a supplemental declaration and an affidavit (Doc. 17, Exs. A and B), Webb states that the financial information contained in Webb's application to proceed before the district court *in forma pauperis* remains true and materially unchanged. In the application (Doc. 2), Webb reports an average monthly income of $1,500 and average monthly expenses totaling $3,350. Webb's application sufficiently shows Webb's inability to pay. The motion to appeal *in forma*

*pauperis* is **GRANTED**.

ORDERED in Tampa, Florida, on June 1, 2026.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

# CERTIFICATE OF SERVICE

I certify that on July 15,, 2026, I filed the foregoing Appendix with the Clerk of the United States Court of Appeals for the Eleventh Circuit using the Court's CM/ECF system. To the best of my knowledge, no appellee counsel has appeared in this appeal for service by Appellant. Appellant will promptly serve any appearing counsel or unrepresented party as directed by the Court or required by the applicable rules.

_____

JEREMIAH VERNON WEBB
Plaintiff-Appellant, pro se